## COMMERCIAL STANDARD INS. CO. v. CENTRAL PRODUCE CO. et al.

### No. 56.

District Court, M. D. Tennessee, Nashville Division.

Feb. 10, 1940.

Cate & Cate, of Nashville, Tenn., for the Insurance Company.

C. C. Warden and Leighton Ewell, both of Manchester, Tenn., and E. D. Jackson, of Nashville, Tenn., for the Produce Company.

DAVIES, District Judge.

1. The Court finds as a fact that on June 6, 1939, the plaintiff, the Commercial Standard Insurance Company issued its automobile liability policy number A L 499,894 to the defendant, Central Produce Company, protecting it against liability for bodily injuries received by any one person in the amount of five thousand dollars for each person, with a limit of ten thousand dollars for each accident, and for property damage liability of five thousand dollars for each accident; that the automobiles expressly covered under the terms and conditions of the policy are set out in the schedule attached thereto; that the policy was issued through its agents, Bennett & Corley, of Nashville, Tennessee, and written by Mr. Maurice R. Pinson, an insurance agent of Nashville, Tennessee. That on July 29, 1939, an International Tractor, motor number 11,718, owned by defendant, Central Produce Company was involved in an accident, as the result of which Clebert Lewis, A. T. Lewis, Hilary Cooper and Mrs. D. T. Lewis were killed, and Marvin Lewis injured, the automobile in question being driven by Clebert Lewis; that administrations have been entered upon the estates of all those who are deceased, and these various parties have brought suit against the defendant, Central Produce Company, seeking to recover damages arising out of the accident.

The Court finds that attached to the International Tractor was a Frehauf trailer, number 50,913, and the Court further finds that this trailer is expressly named in the schedule attached to the policy in question; however, the International tractor number 11,718 is not expressly set out in said schedule.

The Court finds that this tractor in question was purchased by the Central Produce Company about ten months prior to the accident, and that it had been included in a policy, along with the Frehauf trailer number H-48,112, issued by the plaintiff, Commercial Standard Insurance Company to the Central Produce Company in 1938, and that at the time the policy expired on June 6th, 1939, a new policy was written by the home office of the Commercial Standard Insurance Company and forwarded to the defendant, Central Produce Company, through the Nashville agents of the insurance company. However, this policy was not accepted by the Central Produce Company, and was not delivered to it, but was returned with the request that a new policy be issued, excluding the International tractor, number 11,718, and Frehauf trailer number H-48,112, and accordingly the policy in question was written and delivered to the defendant, Central Produce Company.

The Court further finds that at the time the renewal policy was first written to take effect June 6, 1939, that the International Tractor number 11,718 was at that time wrecked, and the defendant Central Produce Company was not operating it, and for that reason that it be excluded from the terms of the renewal policy.

The Court further finds that on or about the 20th day of July, 1939, or a few days before that time, Mr. Maurice Pinson made a visit to the offices of the Central Produce Company, and while there he saw a Chevrolet tractor which was covered by the terms of the policy in question, and it was undergoing repairs, and the question came up about the serviceability of the Chevrolet tractor; the mechanic at that time stated that he thought that the tractor could make one trip in its then condition, if it was handled carefully, and accordingly the tractor did leave the offices of the Produce Company on the 18th day of July, 1939, and made the trip to Chicago and returned on the following day, July 20th, and that during the discussion before the tractor left on the trip, that Mr. Strother, the general manager of the defendant, Central Produce Company, stated to Mr. Pinson that the Chevrolet tractor would have to be put out of service and that he was either going to trade it off for a new car, or have it overhauled, and that in either event that he would want to substitute the International tractor that was then being repaired for the Chevrolet tractor, presumably under the policy in question; however, the Court is unable to find from the facts that the policy was definitely mentioned, but presumes that the parties so intended by that conversation

to imply a substitution under the terms of the policy. However, nothing definite was agreed upon between the parties at that time, and it was merely a statement of intention on the part of Strother. Subsequently, on or about July 26th, 1939, Mr. Pinson again visited the offices of the Central Produce Company, where he talked to Mr. Strother, and at that time the Chevrolet was back in the shop of the Central Produce Company, and was torn down, the hood was off and part of the cylinder head was off, and that Mr. Pinson kidded Mr. Strother at that time about always having to have his Chevrolet tractor in the shop, and Mr. Strother told him that the Chevrolet automobile was going to have to undergo extensive repairs, and that he was expecting to receive the International tractor back at any day from Messrs. Halliburton & Lane, who had been doing a repair job on it, in fact, the tractor had at that time already been returned on one occasion a few days before, but due to the fact that it was not fully repaired, it was sent back to Halliburton & Lane for further work to be done on it; that Mr. Pinson knew that the International tractor was going to be put back in service at some near future date. However, the Court finds that he did not know when the International tractor was put back into service until after the accident in question, and at the time that he was there on July 26th, that he was not definitely instructed by Mr. Strother to make any change in the coverage of the policy in question, so as to include the International tractor; that although Mr. Pinson had been in the habit of making various changes in the policy, and understood that he would be called upon within some date in the near future to make a change and substitution under the terms of the policy, so that the International tractor would be covered by the policy, yet no definite steps to insure the actual coverage, or no definite instructions had been given by Mr. Strother at that time.

The Court further finds that on July 31, 1939, after the accident in question, that the Central Produce Company wrote a letter addressed to the Commercial Standard Insurance Company, Cate & Cate, Bennett & Corley, and Mr. Maurice Pinson, stating that on the 18th of July, 1939, they were forced to put their 1938 Chevrolet one and a half ton tractor insured under policy number 499,894, in the shop for extensive repairs, and that prior to that time the International tractor, motor numbered 11,718 had been in the shop for some time, having been taken out of service, and that it was at the time out of service, that is at the time the policy in question was written on June 6, 1939; further, that in view of the fact that the 1938 Chevrolet tractor would be out of service for a long period of time, that on completion of repairs to the International tractor, it was put back in service in the place and stead of the Chevrolet, and that said International tractor was later put back into service, under the automatic insurance clause of the policy, in the place and stead of the Chevrolet tractor, and that since the tractors were of the same capacity, that they assumed there would be no additional premium for the transfer, and further that when the Chevrolet was repaired and returned to service, they desired its coverage also, and asking that the records be changed in accordance with the request, as of July 28, 1939, and if there was any additional premium, to please advise them of that fact. Accordingly, the endorsement was put on the policy by Bennett & Corley, making the change asked for effective August 2, 1939; but when this endorsement was sent to the home office of the insurance company, it was taken off, and two endorsements were placed on the policy, one taking the Chevrolet out of the policy as of July 18, 1939, and refunding a premium due the assured by reason thereof, and the other endorsement placing the International tractor under the terms of the policy taken as of August 3rd, 1939, and charging a premium at the regular rate for that, the difference between the premiums amounting to approximately fifteen dollars, which went to the credit of the assured.

The Court is of the opinion that the International Tractor not being a newly acquired automobile, was not covered under the automatic clause in the policy, and that if the Central Produce Company had prior to the accident in question, instructed and requested the plaintiff, Commercial Standard Insurance Company, or its agent Mr. Maurice Pinson to eliminate the Chevrolet tractor from the terms of the policy by taking it out of the provisions thereof, and placing in its stead the International tractor, that it would have been entirely unnecessary to have written this letter, and that the manner in which the letter is written and that the language used therein, particularly the first sentence of the letter, which states: that this is to advise you that on or about the 18th day of July, 1939, that they were

forced to take the Chevrolet tractor out of service; that that is cumulative evidence of the fact that prior to the accident in question, no request had been made, nor any instructions given to the insurance company by the produce company to include the International tractor under the terms and provisions of the policy in question.

■ The Court further finds that the International Tractor in question which was involved in the accident, having been owned by the Central Produce Company for some ten months prior to the accident, and having been included in a policy issued prior to the policy in question, which was issued in the year 1938, that insofar as the automatic insurance clause in the contract in question is concerned, the ownership of the International tractor was not a newly acquired ownership on the part of the Central Produce Company, and therefore, said tractor was not insured under that clause of the policy; and that by reason of the fact that the ownership of the International tractor on the part of the Central Produce Company was not newly acquired ownership, within the contemplation of the automatic clause in the policy, that clause did not operate to place said International tractor within the terms and provisions of the policy in question, and hence that clause did not apply to the International tractor.

■ The Court further finds that the tractor in question, the International tractor, was not covered by the terms of the policy, for the reason that the tractor was being operated at the time of the accident by a person in violation of the law, in that George Pullen, who was the operator of the International tractor at the time of the accident, did not have a driver's license for the year 1939.

■ The Court further finds that the International tractor involved in the accident was at the time connected with a Frehauf trailer number 50,319, which trailer was expressly covered by the schedule attached to the policy. However, by reason of paragraph (B) under the heading, "exclusions", the fact that the trailer, although covered by the policy was used with a tractor not covered by the policy, the entire unit was, therefore, not covered by the policy.

Upon request of counsel for defendant Produce Company, the Court further finds that on the day of the accident in question, that Mr. Jackson, representing the defendant, Central Produce Company, conferred with Mr. George Cate, representing the plaintiff, Commercial Standard Insurance Company, and at that time they discussed the question of the liability of the Commercial Standard Insurance Company. This conversation taking place about three o'clock in the afternoon of the day of the accident and subsequent to the accident. During the course of the conversation, they discussed the question of liability of the Commercial Standard Insurance Company. However, Mr. Cate states that he did not admit any liability and that his attitude was more in the nature of securing information at that time about the facts and circumstances relative to the accident, than to the coverage, and that his conversation took place before the letter of July 31st, was written.

Upon special request of the defendant, Central Produce Company, the Court finds as a part of the facts that the Central Produce Company was a good client of Mr. M. R. Pinson, the insurance agent, who wrote the policy in question, and that it had been his habit for some time to make visits to the place of business of the Central Produce Company, on an average of three or four times a week. He was familiar with the equipment owned and operated by said Company and had personal knowledge of the methods in which insurance on the trucks of the Central Produce Company had been handled; that it was his habit, when the Central Produce Company would purchase a new truck, the manager would call Mr. Pinson, or else see him at the place of business of the Company, and advise him that he had purchased a new truck. Mr. Pinson would then call the truck dealer and secure the necessary serial and motor numbers of the truck, within the next two or three days, and arrange to have the truck covered by the policy. It was quite often that he would receive information about new trucks being purchased on Saturday, and would not take any steps to have the truck covered by the policy until the following Monday, it being his idea that the trucks were covered anyway by the ten-day automatic insurance clause, contained in the policy. However, the Court finds that this course of action was followed only as to new trucks purchased by the Central Produce Company, and in no instance did this course of conduct apply to any trucks previously owned by the Central Produce Company, and by endorsement eliminated from the coverage of the insurance policy.

2. The Court is of the opinion that it has jurisdiction of this cause, and that it is a proper case for a declaratory judgment. Maryland Casualty Company v. Consumers' Finance Company, 3 Cir., 101 F.2d 514; United States Fidelity & Guaranty Company v. Pierson et al., 8 Cir., 97 F.2d 560.

Let judgment be entered, holding that the plaintiff, Commercial Standard Insurance Company, is not bound under the terms of its policy to the defendant Central Produce Company, for the payment of any damages involved in the accident in question; nor is it bound to defend any suits arising out of the accident. Let proper decree be prepared and entered.