## UTILITIES INS. CO. v. WILSON.

No. 34526. Nov. 12, 1952.

Rehearing Denied Dec. 16, 1952.

*251 P. 2d 175.*

Pierce, Rucker, Mock, Tabor & Duncan, Oklahoma City, for plaintiff in error.

Cargill, Eagleton & Cargill, Oklahoma City, for defendant in error.

PER CURIAM. Between November 1, and December 1, 1948, a public liability policy of the Utilities Insurance Company was delivered to Leonard Magerus, effective December 31, 1948, for a one-year period to December 31, 1949, covering a 1947 Chevrolet truck. At the time the policy was issued, Magerus also owned a 1948 Chevrolet truck, which was not insured. On January 22, 1949, the 1948 Chevrolet truck was involved in an accident with Lawrence G. Wilson. At the time of the accident the 1947 Chevrolet truck was not in use by Magerus, having been left for some time on his farm without being driven.

Following the accident Lawrence G. Wilson instituted an action in the district court of Oklahoma county against Leonard Magerus and his brother John Magerus, the driver of the truck, for damages for personal injuries alleged to have been sustained as a result of being struck by the 1948 Chevrolet truck, and recovered a judgment against them. After this judgment became final and execution against both Leonard and John Magerus had been returned unsatisfied, an affidavit for garnishment addressed to Utilities Insurance Company was filed in the cause by Lawrence G. Wilson. Utilities Insurance Company answered denying any indebtedness to Leonard Magerus or John Magerus and denying any liability as garnishee in the action. Wilson elected to take issue with the answer, and upon a hearing the trial court held that the insurance policy issued on the 1947 Chevrolet truck also covered the

1948 Chevrolet truck under Paragraph VI and Paragraph IX of the policy written on the 1947 truck.

Insuring Agreement IX provided:

"Automatic Insurance for Newly Acquired Automobiles. If the named insured who is the owner of the automobile acquires ownership of another automobile and so notifies the Company within thirty days following the date of its delivery to him, such insurance as is afforded by this policy applies also to such other automobile as of such delivery date:

"(a) if it replaces an automobile described in this policy, but only to the extent the insurance is applicable to the replaced automobile, or

"(b) if it is an additional automobile and if the Company insures all automobiles owned by the Named Insured at such delivery date, but only to the extent the insurance is applicable to all such previously owned automobiles. * * *"

The 1948 Chevrolet truck, being owned by Leonard Magerus at the time the policy was issued on the 1947 truck, could not have been a newly-acquired vehicle under the terms of the policy.

Appleman on Insurance Law and Practice, vol. 7, §4293, states:

"The purpose of automatic insurance is to give coverage to persons who are already insured with the company in question upon acquiring a new vehicle. The coverage extends to the new acquisition when it replaces the sole automobile owned by the insured."

The 1948 truck could not have been newly acquired within the meaning of Insuring Agreement IX for the further reason that the policy provided that the company must be given notice "within thirty days" following the date of the delivery of the truck to the insured, or the acquisition thereof. The truck not being newly acquired, no such notice was given by Leonard Magerus.

In Mitcham v. Travelers Indemnity Co., 127 F. 2d 27, the court said:

"There is another insuperable objection to recovery under the policy in suit. The provisions of Article 4 in regard to the automatic transfer of insurance from one car to another expressly 'do not apply * * * unless the named insured notifies the company within ten days following the date of delivery of such other automobile.' The insured did not comply with this requirement. The new car was delivered on January 20, 1940, and the insured was killed while driving it on February 1, 1940. It was only after his death and after liability for damages had been incurred that the company was notified that the new car had been purchased and that a transfer of the insurance was claimed.

"The requirement of notice was of obvious importance to the company. Amongst other purposes it served to inform the company of the identity and character of the vehicle to be covered by the policy and to enable the company to exercise the rights reserved to it in the policy, and ascertain whether the insured had complied with his obligation thereunder. * * *

"* * *

"* * * In the pending case, the accident took place after the expiration of the ten-day period and before any notice to the company of the acquisition of the new car, so that, whether the notice provision sets up a condition precedent or a condition subsequent, the new car was not covered by the policy at the time the insurer's liability to Mitcham arose."

The other Insuring Agreement upon which Lawrence G. Wilson relies is Insuring Agreement VI, which reads as follows:

"Temporary Use of Substitute Automobile. While an automobile owned in full or in part by the Named Insured is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded by this Policy for bodily injury liability, for property damage liability and for medical payments with respect to such automobiles applies with respect to another automobile not so owned while temporarily used as the substitute for such automobile. This Insuring Agreement does not cover as an Insured the owner of the substitute

automobile or any employee of such owner."

The use of the language "not so owned" in Insuring Agreement VI, clearly indicates that the insurer did not intend to assume the legal responsibility of the named insured if the substituted vehicle was owned by the insured. To hold otherwise would be to permit an operator of more than one truck to insure only one vehicle and in the event of an accident with any of his vehicles to take the position that the policy covered the vehicle involved in the accident. This obviously could not be the intention or purpose of the insurance contract.

Insuring Agreement VI also contains a further limitation "this Insuring Agreement does not cover as an insured the owner of the substitute automobile." Here again one of the purposes of this language is to prevent the owner of more than one vehicle from insuring only one vehicle and thereafter taking the position that the policy covered the vehicle which might become involved in the accident.

The 1948 truck, having been owned at all times by Leonard Magerus, could not be considered a vehicle "not so owned"; and further, it falls within the provision of Paragraph VI reading "this Insuring Agreement does not cover as an insured the owner of the substitute automobile."

There is nothing ambiguous in the language of Insuring Agreement VI. It was the intention of the insurer to limit coverage in the case of a substituted vehicle to such vehicle as was not owned by Leonard Magerus at the time of the substitution. In Metropolitan Life Insurance Co. v. Rosier, 189 Okla. 448, 117 P. 2d 793, the court said:

"An insurance contract is subject to the same rules of legal interpretation as other written contracts. It is true they may, to a greater degree, be amenable to the demands of public policy, and therefore subject to broader legislative regulations. But the parties thereto, as in other contracts, are bound by the plain terms thereof, unless the same violates some rule of public policy, or infringes the statute, and, as in other cases, all doubt arising from ambiguities and conflicting provisions is resolved against the one who prepared the contract * * *. The meaning of an insurance contract is no more subject to judicial change than any other contract. * * *"

In Farm Bureau Auto Insurance Co. v. Martin, 97 N. H. 196, 84 Atl. 2d 823, it was stated:

"In order to establish coverage for a motor vehicle it must be described or referred to in the policy and capable of being identified as such."

We cannot from an examination of the insuring provisions of the policy find any language broad enough to cover the 1948 truck. It was not a newly-acquired automobile within the provisions of Insuring Agreement IX, and it was not a substitute automobile within the provisions of Insuring Agreement VI. We conclude, therefore, that the policy of insurance written on and covering the 1947 Chevrolet truck did not cover the 1948 Chevrolet truck, either as a newly-acquired or as a substitute vehicle.

Defendant in error, Lawrence G. Wilson, asks that this appeal be dismissed for the reason that a copy of the case-made was not served on Leonard Magerus or his attorney. With this proposition we cannot agree. 12 O.S. 1951 §958 provides, in part, as follows:

"The case so made, or a copy thereof, shall, within fifteen days after the judgment or order is rendered, be served upon the opposite party or his attorney, who may within three days thereafter suggest amendments thereto in writing, and present the same to the party making the case, or his attorney."

The controversy presented here is one between Wilson as garnishor and Utilities Insurance Company as garnishee. The controversy between Wilson and Magerus has become final and is not in issue here. Magerus is not an

"opposite party" as contemplated by the statute.

For the reasons herein stated, the judgment is reversed, with instructions to the trial court to enter judgment for plaintiff in error, Utilities Insurance Company.

This court acknowledges the services of Attorneys Dudley H. Culp, A. C. Kidd, and A. S. Wells, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V. C. J., and WELCH, GIBSON, DAVISON, JOHNSON, O'-NEAL, and BINGAMAN, JJ., concur.