[No. 36984.    En Banc.    February 11, 1965.]

NATIONAL INDEMNITY COMPANY, INC., *Appellant*, v. VINCENT GIAMPAPA *et al.*, *Respondents.**

*Reported in 399 P. (2d) 81.

Sweet & Merrick and Donald R. Douglas, for appellant.

Lycette, Diamond & Sylvester and William J. Millard, Jr., for respondents.

FINLEY, J.—We are here concerned with the construction to be given the "newly acquired automobile" provision in a policy of indemnity insurance.

Percy Killmer, while driving a 1956 Ford (purchased in March 1960), was involved (March 15, 1961) in a collision with a truck owned and driven by Vincent Giampapa, who, thereafter, brought an action for damages against Mr. and Mrs. Killmer. The Killmers tendered the defense to his insurance company, National Indemnity Company, Inc., which defense was accepted with a reservation of rights. Giampapa recovered a judgment for $3,000 and costs against the Killmers.

The insurance company then brought a declaratory-judgment action against the Killmers and Giampapas, praying for a judgment that it was not liable to pay the judgment against the Killmers in consequence of the collision with the Giampapa truck. From a judgment dismissing the action with prejudice, this appeal is taken.

Killmer had purchased an automobile-liability-insurance policy from the appellant, covering a 1949 Cadillac as the "Described Automobile," with a policy period extending from September 16, 1960, to September 16, 1961. We note and emphasize as follows that: *the coverage was limited* to an obligation by the company to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of "bodily injury" and

". . . injury to or destruction of property, . . . caused by accident and arising out of the ownership, maintenance or use of the automobile;"

in short, a protection for other users of the highway to whom the insured driver might become liable for bodily injuries or property damage.

On or about March 11, 1961, the 1949 Cadillac became inoperable. Killmer thereafter began using the 1956 Ford automobile which, as indicated, he had owned when he acquired the policy of insurance designating the 1949 Cadillac as the insured vehicle. No notice was given to the company that Killmer desired to substitute the 1956 Ford for the 1949 Cadillac as the "Described Automobile," until after the collision with the Giampapa truck.

The Killmers and Giampapas rely on the following portion of the liability policy:

"(1) Described Automobile—the motor vehicle . . . described in this policy . . .

" . . .

"(4) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, . . . and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy. . . ."

Any conditions relative to notice under (ii) may be immediately removed from any consideration since the coverage was only under A (Bodily Injury) and B (Property Damage), and notice to the company in such a situation is *expressly waived by the quoted terms* of the policy. The failure of Killmer to notify the company of his replacement of the 1949 Cadillac with the 1956 Ford until after the collision with the Giampapa truck consequently has no bearing on the issue of the liability of the insurance company.

Under the facts, as stated, and under the explicit findings of the trial court, Killmer did not commence his use of the 1956 Ford until March 11, 1961, which was after the 1949 Cadillac became inoperable, and, furthermore, the

1956 Ford was then his only operable car. There is no question here of the insurance being used *to cover two operable cars.*

■ It is the purpose of such policies, on the one hand, to protect other users of the highways and, on the other hand, to limit the liability of the insurance company to the operation of one car by the insured. Where an insured possesses several operable cars, there would always be the possibility that he could claim to have replaced the "Described Automobile" with whatever car he happened to be driving when he became involved in an accident. The cases, consequently, hold that in the absence of the notice of a replacement of the "Described Automobile," if provided by the policy, there can be no replacement with another car so long as the "Described Automobile" is owned by the insured and remains operable. *Mitcham v. Travelers Ind. Co.* (C.C.A. 4th 1942), 127 F. (2d) 27. That is, the insured must have either disposed of the car or it must be inoperable (some cases such as *State Farm Mut. Auto. Ins. Co. v. Shaffer* (1959), 250 N.C. 45, 108 S.E. (2d) 49, indicate that if ownership is retained it must be incapable of further service).

■ In the instant case the unchallenged finding of the trial court is that the "Described Automobile" (the 1949 Cadillac) became inoperable on March 11, 1961. It is undisputed that the transmission had gone out; it was never used again and was junked.

In this connection the trial court also found that:

" . . . Also, on or about March 11, 1961, the defendant, Percy Killmer began using a 1956 Ford, which automobile he had owned for a year prior. He had been working upon the body of said Ford for many months and such automobile had become usable and *was used after the 1949 Cadillac had become inoperable.*" (Italics ours.)

There is no suggestion that Killmer had any other operable car than the 1956 Ford after the "Described Automobile," *i.e.*, the 1949 Cadillac, became inoperable. There was no basis for an implication that the insurance company could have been liable under the policy for more than one

operable car, because Killmer's activities were in fact limited to a one-car operation. The 1949 Cadillac was the "Described Automobile" until it became inoperable, and, thereafter, a specifically identifiable replacement, *i.e.*, the 1956 Ford, came into the picture for the first time. Just when the Ford became operable is not clear. The trial court found that Killmer

". . . had been working upon the body of said Ford for many months and such automobile had become usable and was used after the 1949 Cadillac had become inoperable."

The distinctive feature here is that the 1956 Ford did not come under the policy coverage until it replaced the "Described Automobile," *i.e.*, the 1949 Cadillac which had become permanently inoperable. Thereupon, the Cadillac was not covered, the Ford was, under the literal meaning and effect of the provisions of the insurance policy.

The insurance company resists liability on the basis that more than a replacement of one car by another is involved; and that the 1956 Ford was not and could not be a "newly acquired automobile" because it was owned by the Killmers at the time the insurance policy was secured with the 1949 Cadillac being designated as the "Described Automobile."

Concededly, there is support for this position, notably in *Brown v. State Farm Mut. Auto. Ins. Co.* (Ky. 1957), 306 S. W. (2d) 836. In that case the facts were stated as follows:

". . . On June 13, 1955, the Company issued appellant an indemnity policy on his 1948 Studebaker automobile. On the day the policy was issued appellant also owned a 1947 Ford automobile, as well as a 2-ton Ford Truck, neither of which was covered by the policy. The Ford car had no engine in it on the day the policy was issued and could not be operated. In July 1955, appellant purchased a new motor for this Ford and on or about August 15th, his Studebaker became inoperable and he ceased driving it on that date. He had an engine installed in his Ford car, put it in driving condition and began using it. He did not operate his Studebaker thereafter and had its engine removed.

"On or about August 25, 1955, while driving this Ford appellant had an accident in which three persons riding with him were injured. Immediately after this accident he

notified the Company thereof and requested it to defend him against any suits the injured persons might bring. . . ." (pp. 836-837)

The insurance company refused to recognize any liability, and the Court of Appeals of Kentucky sustained that position stating:

"By no stretch of the imagination did appellant comply with the terms of the policy when he attempted to substitute the Ford car he owned at the time the policy was issued for the Studebaker, covered by the policy. When the policy gave appellant the right to replace his Studebaker with a 'newly acquired automobile * * * if the named insured notifies the company within thirty days following the date of its delivery to him,' certainly it was within the contemplation of the parties that the replacement must be a car the insured would acquire in the future and not one he owned at the time the policy was issued to him.

" . . .

" . . . In replacing the Studebaker with the Ford appellant did not comply with the terms of the policy. Had the Company known he was replacing the Studebaker with an old Ford he owned at the time the policy was issued on the Studebaker, it might have refused permission for him to do so, as it had a right to do under the policy. Manifestly, appellant could not replace the Studebaker with the Ford without notifying the Company and affording it an opportunity to raise the premium, as the policy provided it might do." (pp. 837-838)

We do not consider the case just cited and quoted as controlling. We are not advised by the opinion of the extent of the coverage in the policy in that case (clearly notice of a substitution of cars was not waived), and from the paragraph last quoted it would appear that the company could have refused permission to make the replacement and could have raised the premium. We have no such situation in the instant case. As to it, the insurance company specifically waived the requirement of notice of a replacement of the described car where the coverage was limited to "Bodily Injury Liability" and "Property Damage Liability." It is conceded that there was no question of any increase of premium involved in the substitution of the

1956 Ford for the 1949 Cadillac. Obviously, insofar as liability insurance was concerned, the company in the instant case was not concerned with what car was substituted if there was actually a replacement of the car described in the policy which had become inoperable.

We think that the Kentucky court, along with others, puts an interpretation on "newly acquired" which is not warranted by either the purpose of the policy, the contemplation of the parties, or the wording of the definition of the "newly acquired automobile" contained in the policy. We quoted that definition earlier in the opinion and repeat it again:

"(4) Newly Acquired Automobile — an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, . . . and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy. . . ."

■■ The term "Newly Acquired" in the caption does suggest an automobile acquired subsequent to the insurance policy, but the definition of that term does not support the suggestion; it is simply an automobile

". . . ownership of which is acquired by the named insured . . . if . . . it replaces an automobile . . . covered by this policy. . . ."

The date of the acquisition of the 1956 Ford seems to us to be immaterial in the contemplation of the contracting parties (the insured and the insurer) if, in fact, the automobile clearly or actually replaces a "Described Automobile" which has been sold or which has become inoperable. As said in *Thompson v. State Auto. Mut. Ins. Co.*, 122 W. Va. 551, 558, 11 S. E. (2d) 849, 852 (1940),

". . . A caption should never of itself be taken to override the intention of the parties to an insurance policy as shown by the provisions and clauses inserted thereunder. . . ."

Thus, on the basis of the foregoing discussion, our holding herein that Killmer's 1956 Ford was within the policy coverage is dictated by logic, by reason, and by good public policy. It is supported by *Boston Ins. Co. v. Smith* (D.C.A. Fla. 1963), 149 So. (2d) 68, and by statements in *Thompson v. State Auto. Mut. Ins. Co., supra,* and *Maryland Indem. & Fire Ins. Exchange v. Steers,* 221 Md. 380, 157 A. (2d) 803 (1960)[1]. In the latter case, the court had before it for consideration the identical policy language with which we are concerned and the same liability coverage, *i.e.,* bodily injury and property damage.

In fine, this appeal presents two factors or considerations for analysis, evaluation and determination: It concerns (a) a factual dispute and (b) the language of pertinent provision of the contract of insurance. As to (a), the trial court has determined the facts and made specific findings. There is no exception as to the pertinent findings. Under *Thorndike v. Hesperian Orchards, Inc.* 54 Wn. (2d) 570, 343 P. (2d) 183 (1959), we must accept the findings as verities, and we do so. As to (b), the pertinent provisions of the policy are less than unambiguous, and, if doubt exists, should be construed in favor of the insured, and we do so, under our decisions in *Carroll v. The Union Labor Life Ins. Co., ante* p. 513, 398 P. (2d) 164 (1964); *Washington Restaurant Corp. v. General Ins. Co. of America,* 64 Wn. (2d) 150, 390 P. (2d) 970 (1964); *Lawrence v. Northwest Cas. Co.,* 50 Wn. (2d)

---

[1]In the *Maryland Indemnity* case, when the policy was issued in December 1955, the insured owned a 1946 Oldsmobile which was the "Described Automobile." Sometime prior to April 1956, that car became inoperative, and, after using public transportation for several weeks, the insured purchased, on May 15, 1956, a 1946 Dodge; but this change was not brought to the attention of the insurer. When the renewal policy was issued in December 1956, the 1946 Oldsmobile still appeared as the "Described Automobile." In March 1957, the insured sold the Dodge and bought a 1955 Ford, transferring the license plate from the Dodge to the Ford. In November 1957, the insured, while driving the Ford, was involved in a collision. It was held that the failure to notify the company of the replacement of the Oldsmobile, as the "Described Automobile," by the Dodge, and of the Dodge by the Ford, was immaterial under the terms of the policy, and that the Dodge and then the Ford had been newly acquired cars and replacements under the policy.

282, 311 P. (2d) 670 (1957); *Christensen v. Sterling Ins. Co.,* 46 Wn. (2d) 713, 284 P. (2d) 287 (1955).

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, HUNTER, HAMILTON, and HALE, JJ., concur.

HILL, J. (dissenting)—I dissent. I concur in so much of the majority opinion as relates to the immateriality of the failure to notify the insurance company of the replacement of the Cadillac with the Ford.

However, there is only one case[2] which I have been able to find which holds, with the majority, that an automobile which the insured owned when the policy of liability insurance was issued can be a "newly acquired automobile" within the purview of the policy, and there is abundant authority to the contrary. *Maryland Indem. & Fire Ins. Exchange v. Steers* (1960), 221 Md. 380, 157 A. (2d) 803, cited by the majority as containing statements which support its position, is not a case involving the contention that an automobile owned by the insured when the policy was issued is a "newly acquired automobile." As indicated in the footnote in the majority opinion, the Dodge was acquired after the policy was issued and the Ford was acquired after the policy was renewed. Each met the requirement of being "newly acquired." Indeed, the Maryland court distinguished *Brown v. State Farm Mut. Auto. Ins. Co.* (Ky. 1957), 306 S. W. (2d) 836, as being a case where the court had rejected an attempt by the insured to have covered under the "newly acquired" clause an automobile which he owned at the time he took out the insurance.

In addition to the *Brown* case, *supra*, the following cases are squarely in point on the proposition that an automobile to be "newly acquired" must have been acquired after the issuance of the policy:

*Lynam v. Employers' Liability Assur. Corp.* (D.C. Del. 1963), 218 F. Supp. 383. (This is not only the latest case

---

[2]*Boston Ins. Co. v. Smith* (D.C.A. Fla. 1963), 149 So. (2d) 68. This is an unusual case, which will be discussed later in this dissent.

on the specific point with which we are here concerned, but the opinion makes a comprehensive survey of the authorities.) The court held:

" . .. . The only times when a vehicle may come within the Newly Acquired Automobile Clause are (1) when a vehicle is acquired which in fact is a replacement and the owner discards the old vehicle, (2) when the old vehicle is retained but is not in working condition. The new vehicle must also be acquired after the issuance of the policy." (p. 385)

*Commercial Standard Ins. Co. v. Central Produce Co.* (D.C. M.D. Tenn. 1940), 42 F. Supp. 31 (affirmed sub nom. without opinion (C.A. 6th, 1941)), 122 F. (2d) 1021. This case held: that "Automatic Insurance" for "newly acquired automobiles" did not cover a tractor (A), which had been undergoing repairs when the policy was issued and, hence, had not been named therein, when it was placed back in service as a replacement for a tractor covered by the policy, since tractor A was not "newly acquired."

*State Farm Mut. Auto. Ins. Co. v. Shaffer* (1959), 250 N. C. 45, 108 S. E. (2d) 49. The court here held that a car owned by the insured at the time the policy was issued was not a "newly acquired" car. In stating the terms of one of the policies, the court said:

"The policy by Nationwide provides coverage for a 'newly acquired automobile.' A newly acquired automobile is defined by the policy to mean 'an automobile ownership of which is *acquired* by the named insured . . . if it *replaces* an automobile owned by (named insured) and covered by this policy. . . .' (Emphasis and parentheses ours.)" (p. 50)

After discussing the authorities, the court concluded:

"It is our opinion that the replacement vehicle is one the ownership of which has been acquired after the issuance of the policy and during the policy period, and it must replace the car described in the policy, which must be disposed of or be incapable of further service at the time of the replacement. . . ." (p. 52)

*Howe v. Crumley, Jones & Crumley Co.* (C.A. Ohio 1944), 57 N. E. (2d) 415. Here, a fleet of trucks was insured. A 1930

White truck was owned by the insured, but was not included in the coverage because it was not the intention of the insured to use it in his business. One of the insured trucks was so badly damaged it had to be withdrawn from active operation, and the 1930 White truck was substituted for it. The plaintiff was injured in a collision with the 1930 White truck and recovered damages. It was held that the 1930 White truck, having been owned by the insured when the policy was issued, was not a "newly acquired automobile" under the "Automatic Insurance for Newly Acquired Automobiles" provision in the policy.

*Utilities Ins. Co. v. Wilson* (1952), 207 Okla. 574, 251 P. (2d) 175. This case involved the interpretation of the "Automatic Insurance for Newly Acquired Automobiles" provision, and the court said:

"The 1948 Chevrolet truck, being owned by Leonard Magerus at the time the policy was issued on the 1947 truck, could not have been a newly-acquired vehicle under the terms of the policy." (207 Okla. at p. 575)

*Providence Washington Ins. Co. v. Hawkins* (Tex. Civ. App. 1960), 340 S. W. (2d) 874. This is a fire insurance, and not a liability insurance, case; but the discussion of what constitutes a "newly acquired automobile" is apropos. Fourteen specifically described tractors were covered by a fire insurance policy. A tractor owned by the insured for 7 years was substituted for one of the 14 tractors and was, shortly thereafter, burned. There was a provision in the policy for "automatic insurance for newly acquired automobiles," if the newly acquired automobile replaced one of the insured cars. The court said:

" . . . Neither was the tractor in question 'newly acquired.' The undisputed evidence is that appellees purchased it in 1952—seven years previously. A vehicle already owned by insured before the policy was issued is not 'newly acquired' under the provision. . . ." (p. 876)

The texts say: "Nor is a vehicle 'newly' acquired when it was previously owned by the insured and merely put back into service." 7 Appleman, Insurance Law & Practice § 4293, p. 92; and in 12 Couch, Cyclopedia of Insurance Law (2d ed.) § 45:193, p. 240-241:

"An automobile does not come within the newly acquired replacement automobile coverage unless it is acquired after the policy is issued. Otherwise stated, a newly acquired vehicle clause is by definition restricted to a vehicle thereafter acquired, as it could not have the status of a newly acquired vehicle if owned at the time the insurance on another vehicle of the insured is procured even though it could not be run at that time because it had no motor.

"In addition to being acquired after the making of a contract of insurance, it is of course necessary that it be acquired during the policy period."

Opposed to this somewhat formidable array of authority, which says that an automobile to be "newly acquired" within the purview of the insurance policies must be acquired subsequent to the issuance of the policy, we have the well-reasoned majority opinion in the present case, and the opinion by a divided court (two to one) in *Boston Ins. Co. v. Smith* (D.C.A. Fla. 1963), 149 So. (2d) 68, in what would seem to be a *sui generis* case. Smith applied June 19, 1961, for liability insurance on the only automobile he owned—a 1951 Mercury which had been involved in a wreck 3 days before. The agent mailed the application to the assigned risk office in another city. The risk was assigned to the appellant insurance company, which issued a policy covering the period from July 4, 1961 to July 4, 1962. In the meantime, on June 22, 1961, Smith purchased a 1951 Pontiac, and when the policy designating the 1951 Mercury as the "described automobile" was issued, he did not advise the insurance company of any change. While driving the Pontiac, he was involved in a collision on September 26, 1961. The issue was the liability of the insurance company for the damages caused by the Pontiac. The "newly acquired automobile" provision is apparently identical with the one with which we are here concerned. The evidence as to when the insured replaced the Mercury with the Pontiac is described by the court as "indefinite." It did appear that on June 16, 1961, he drove the Mercury to his home, and that a week or two later he sold it to a junk dealer. The two-judge majority opinion held that it was a "fair inference" that the Pontiac replaced the Mercury some

time between June 19, 1961, the date of the application, and July 4, 1961, when the coverage period commenced, and said:

" . . . In this situation we think, construing the policy provision in question most strictly against the insurance company, that on the date of the replacement the Pontiac came under the policy coverage as a 'newly acquired automobile.' " (p. 70)

No authorities were discussed except those dealing with the generally accepted generalities that ambiguities in an insurance policy are to be construed strictly and strongly against the insurer and that such policies are to be construed "so as to effect the dominant purpose of payment to the insured." The court concluded:

"We consider that our construction of the policy provision in question is consonant with the obvious purpose of that provision to give coverage to a newly acquired automobile when it replaces the sole automobile owned by an insured. In the ordinary case such a replacement of one car by another owned by the same person would probably not appreciably increase the insurer's liability for the coverage contracted for by an insured." (p. 70)

Judge Sturgis, who dissented, could find no ambiguity and urged that the language of the "newly acquired automobile" provision could not be rationalized as "extending coverage to an automobile already owned by the insured at the time the insurance contract was executed," and marshalled some of the authorities so holding. It would seem to have been his view that the "dominant purpose of payment to the insured" had to come within the terms of the policy.

If it is desired to distinguish the *Smith* case, it could be done on the basis that the 1951 Pontiac was acquired after the application for insurance was made (June 19, 1961), though before the policy was issued (July 4, 1961).

In any event, I believe we should adhere to the authorities heretofore cited, holding that a car owned by the insured at the time his liability policy became effective is not a "newly acquired automobile" within the purview of the policy provision now before the court. Unless "newly acquired" means acquired subsequent to the issuance of the

policy, or at least subsequent to the application for the policy, it means nothing.

I would reverse the judgment and direct the entry of a judgment absolving the insurance company from liability.

WEAVER and OTT, JJ., concur with HILL, J.