[No. 726-3. Division Three. August 1, 1973.]

KENNETH R. ROWLAND *et al., Respondents,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant.*

*Terry A. Brooks* (of *Nashem, Prediletto, Brooks & Schussler*), for appellant.

*Perry J. Robinson*, for respondents.

McINTURFF, J.—Plaintiffs brought this action seeking recovery on their insurance policy with the defendant insurer, for property damage and medical expense incurred in an automobile accident. Defendant insurance company denied liability under the policy. The trial court granted judgment for plaintiffs, and defendant appeals.

ISSUE: Whether the replacement of an automobile within the meaning of the "newly acquired automobile" clause of an insurance policy is limited to when the replaced automobile is either totally inoperable or no longer owned. We answer in the negative.

The evidence shows that prior to February 20, 1971 plaintiffs Kenneth Rowland and Esther Rowland, husband

and wife, owned a 1969 Datsun automobile which was insured by the defendant in the name of Esther Rowland only. On Saturday afternoon, February 20, 1971, plaintiffs purchased a 1970 Mazda automobile, and the court found that on the same day they gave the 1969 Datsun to their 18-year-old daughter Roxanna, substantially for her exclusive use. About 5 p.m. on the day of the purchase, Mrs. Rowland and the seller of the vehicle attempted to call the Rowlands' insurance agent but were unable to contact him. Plaintiffs designated Ed Middlesworth and State Farm Mutual as their agent and insurance company on the conditional sales and security agreement.

At 1:30 a.m. the next day, February 21, 1971, the Mazda automobile was destroyed in an accident, and Mr. and Mrs. Rowland suffered injuries. On February 22, 1971 plaintiffs notified defendant of the accident and of the purchase of the Mazda, and submitted their claim against the policy. Defendant insurer denied plaintiff had any coverage on the Mazda under the policy.

The policy provided for extended coverage of a newly acquired automobile, which is defined in the policy as "an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if (1) it replaces an automobile owned by either and covered by this policy, . . ."

The trial court in its findings of fact, conclusions of law and judgment ruled in favor of the plaintiffs, holding that defendant insurer was liable because the 1970 Mazda was a newly acquired automobile within the meaning of the replacement clause of the insurance policy. Defendant appeals, contending that for a newly acquired automobile to be a "replacement automobile" the old automobile must be either totally inoperable or no longer owned. Relying on *National Indem. Co. v. Giampapa*, 65 Wn.2d 627, 399 P.2d 81 (1965); *Trippel v. Dairyland Mut. Ins. Co.*, 2 Wn. App. 318, 467 P.2d 862 (1970); *Lehne v. Bishop*, 2 Wn. App. 1, 467 P.2d 346 (1970), defendant insurer asserts that since the 1969 Datsun was still operable and still under the own-

ership of the plaintiffs, the 1970 Mazda was not a replacement for the 1969 Datsun.

Under the findings of fact, conclusions of law and memorandum opinion of the trial court we find the cited cases inapplicable to the instant case. An insurance policy, like other contracts, must be interpreted with an eye toward the intention of the parties. The policy in the instant case affords automatic coverage to the policyholder when the policyholder replaces an automobile which is already covered by the policy and notifies the insurer within 30 days of delivery. The policy provides in pertinent part:

> Newly Acquired Automobile—means an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if (1) it replaces an automobile owned by either and covered by this policy . . . on the date of its delivery, and (2) provided that no insurance shall be applicable to such newly acquired automobile unless as a condition precedent the named insured within 30 days following such delivery date applies to the company for insurance on such newly acquired automobile. . . . The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile.

■ Although it is true that the cases relied on by defendant seem to turn on the fact that the old automobile is either totally inoperable or no longer owned, we believe these are two instances of many where the acquisition of a new car could be held to replace the old automobile as that term is used in the insurance policy. *National Indem. Co., v. Giampapa, supra,* supports the contention that no formal requirements are necessary for the automobile in question to be considered a "replacement vehicle," unless that term is defined in the policy. As noted by the trial court in its memorandum opinion:

> Various fact situations have developed criteria in cases of this nature. For instance, where one automobile has become inoperable and another purchased, a "replacement" is taken to be proven. When one automobile is sold and another acquired, replacement has been held to be

proven. Such situations, however, merely present more compelling proof than in the present situation. Numerous other examples of proof of replacement status could be cited. For instance, if a new automobile is purchased and the one originally insured placed upon a lot for sale, or is advertised as for sale by the owner. These facts would tend to prove the intention to replace the one car by the other. . . . However, in any consideration of this problem, the ultimate question is *whether, in fact, the new car was intended to take over the functions of the old, and was the car originally named in the policy, put to some other use than when the coverage was originally obtained.*

(Italics ours.)

As noted in 12 G. Couch, *Insurance* § 45:210 (2d ed. R. Anderson 1964), at 255:

In some instances, the concept of replacement has been construed as a matter of intent rather than an actual replacement as to ownership. Thus the fact that the car described in the policy was retained by the insured and was in a legally usable condition has been held not to preclude transfer of coverage to a newly acquired car, where such car was actually purchased to replace the first car.

■ The language of the insurance policy must be construed in accordance with the principle that it is not what the insurer intends its words to mean, but what a reasonable person in the position of the insured would have understood them to mean. *Cf. Glen Falls Ins. Co. v. Vietzke,* 82 Wn.2d 122, 125, 508 P.2d 608 (1973).

The narrow question presented is whether there is substantial evidence to support the trial court's finding that the 1970 Mazda was a replacement automobile. We find the evidence clearly supportive of the trial court's factual determination. The 1969 Datsun had been given to the daughter for her exclusive use in driving some 18 miles to and from a beauty school. This left Mrs. Rowland, who worked, in need of transportation. The purchase of the Mazda was for her use and benefit. The insurance policy does not define what is meant by a "replacement automobile." Had the

company wished to limit the word "replaces," as used in the policy, to situations where the old automobile was either mechanically unusable or no longer owned, it need only have inserted a provision in the insurance policy so defining the term. In the absence of such provision in the policy, the fact that the automobile was still mechanically operable and the owners had not totally divorced themselves from all incidents of ownership, was regarded by the trial court as indecisive of the issue. The trial court considered all of the factors surrounding the intent of the parties and determined the 1970 Mazda was purchased to replace the 1969 Datsun.

Further, the argument that defendant could be placed in the position of insuring both vehicles for a single premium is not compelling. The evidence clearly manifests the intent of plaintiffs to cover the Mazda. This intention is perhaps more lucidly vivid where the automobile being replaced is mechanically inoperable or no longer owned, than in a case where the exclusive use of the vehicle is turned over to a member of the same family. Nevertheless, the trial court had the opportunity to view the demeanor of the witnesses and stated unequivocally that "[Mrs. Rowland's] expression of intent seemed truthful and the court believes it. . . . There is very compelling evidence of an intent to cover the car in question in this case."

■ Intent is difficult to discern and could perhaps be feigned without detection. However, the mere possibility of such an abuse does not and has not deterred the courts from making such determination.[1] Today courts determine intent on a daily basis in a variety of cases.

---

[1]The following is stated in W. Prosser, *Torts* § 4 (4th ed. 1971), at page 21: "The courts always have stood more or less in dread of a 'flood of litigation' involving problems which they are not prepared to deal with. At one time they refused to permit any inquiry as to the state of a man's knowledge, or his belief or intentions, upon the ground that 'they cannot be known.' For many years they denied all recovery in cases of 'mental suffering' involving fright or shock without physical impact, for fear that it would 'open a wide door for unjust claims, which cannot successfully be met.' The refusal to extend the obligation

The policy does not require that notice be given prior to the accident, but merely within the 30-day period after the replacement has in fact taken place. *Cf. Glen Falls Ins. Co. v. Vietzke, supra.* The plaintiffs were as diligent as humanly possible in attempting to give and in giving the notice required by the policy. Ex post facto notification within 30 days of delivery of the new automobile satisfied the policy as written and is immaterial to the classification of the Mazda as a replacement vehicle.

■ This court will not read into the insurance policy words which are not already there. *Bernard. v. Triangle Music Co.,* 1 Wn.2d 41, 48, 95 P.2d 43, 126 A.L.R. 558 (1939); nor will we rewrite the terms of contracts which the parties have deliberately made for themselves. *Chaffee v. Chaffee,* 19 Wn.2d 607, 625, 145 P.2d 244 (1943). There is no evidence that the word "replace" as used in the policy has a univocal meaning peculiar to the insurance field. Nor is there any evidence that the parties intended the word to have any different meaning than the usual and ordinary meaning of the term; that is to provide or produce a substitute or equivalent in place of a person or thing. *See Webster's Third New International Dictionary* (1969).

■ ■ Objective actions of the insured, consistent with his expressed intent to replace one auto with another, are sufficient to bring into effect the "newly acquired auto" provision of this policy. The trial court's finding and conclusion that it was the intent of the insured, based upon the objective evidence before him, to replace the '69 Datsun

of a contract to third parties was based upon the 'infinity of actions' and the 'most absurd and outrageous consequences' which might ensue, and this is still the chief obstacle to holding some contractors liable to third persons.

"The reluctance of many courts for so many years to recognize the so-called 'right of privacy' rested upon the same objection, and many similar instances of hesitation in the face of an expected deluge of questionable claims or troublesome problems of proof might be mentioned. Such difficulties of administration are perhaps most significant in new developments of the law, and are overcome slowly as the courts find some workable method of affording redress where it is clearly merited and justified as a matter of policy." (Footnotes omitted.)

with the '70 Mazda, are sufficient. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). *See also Fleming v. Nationwide Mut. Ins. Co.*, 383 F.2d 145 (4th Cir. 1967); *Merchants Mut. Cas. Co. v. Lambert*, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483 (1940).

Judgment of the trial court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Petition for rehearing denied August 30, 1973.

Review denied by Supreme Court October 25, 1973.