Merrimack,  
Dec. 4, 1951. }  No. 4056.

### FARM BUREAU AUTOMOBILE INSURANCE COMPANY

*v.*

### ARNOLD W. MARTIN & a.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the plaintiff.

*George P. Cofran* and *Thomas E. Flynn* for the defendant Arnold W. Martin, furnished no brief.

*Tobey & Zellers* for the defendant Louis R. Martin, furnished no brief.

*H. Thornton Lorimer* and *Francis E. Perkins* (*Mr. Lorimer* orally), for Lewis and Barbara Kelso.

*Sulloway, Piper, Jones, Hollis & Godfrey* for the defendant Boston & Maine Transportation Company.

*Peter J. King, Sr.,* for Harold A. Madden, furnished no brief.

JOHNSTON, C. J. It is not disputed that the operation of the Hudson sedan by the defendant Louis R. Martin was with the permission of the named insured. Accordingly, there was coverage so far as definition of the insured is concerned.

It is also undisputed that the accident happened during the six months period for which the policy was written and that the policy had not been cancelled prior to the accident.

The plaintiff claims that the policy had lapsed as applied to the operation of the Hudson sedan prior to the accident on May 27, 1949, because of the failure of Arnold W. Martin to notify the plaintiff of the acquisition of the Hudson within thirty days of April 23, 1949, the date of its delivery to him. While the descriptive name of this provision of the policy may not be important, in *Merchants &c. Company* v. *Egan*, 91 N. H. 368, a similar provision under the statute then in force was held to be a condition. See also,

*Merchants &c. Company* v. *Lambert,* 90 N. H. 507, 511. The argument of the plaintiff may well have been true, prior to the enactment of section 1, chapter 198 of the Laws of 1941 (R. L., *c.* 122, *s.* 16), which drastically amended the motor vehicle liability insurance law of this state with respect to the rights of third persons.

However, the required provisions of a motor vehicle liability policy as stated in section 16 of chapter 122 of the Revised Laws must now be given effect. Paragraph III of this section is as follows: "With respect to accidents which occur within this state and subject to the minimum limits of liability validly made under the authority of paragraph VII of section 1 of this chapter the policy is to be interpreted with reference hereto and the liability of the company under the policy shall thereby become absolute upon the occurrence of such an accident; no statement made by the insured or on his behalf, and no violation of exclusions, conditions, other terms, or language contained in the policy, and no unauthorized or unlawful use of the vehicle except as provided in paragraph VI of this section, whether or not a premium charge has been made and paid, shall operate to defeat or avoid the policy so as to bar recovery for such accidents within said limits of liability."

"The purpose of the New Hampshire Financial Responsibility Act [R. L., *c.* 122] was fundamentally to provide compensation for innocent persons who might be injured through faulty operation of motor vehicles. *Opinion of the Justices,* 81 N. H. 566. . . . "The rights of the injured party are not simply derivative from those of the insured. They are to some extent independent of those rights and are gained from the statute. This was recognized in the first enactment of the law. Laws 1927, *c.* 54, *s.* 6. To a greater extent is this true under the present statute. *Phoenix Ind. Co.* v. *Conwell,* 94 N. H. 146, held that rights under the minimum limits of liability required under the provisions of paragraph VII of section 1 of chapter 122 become absolute upon the occurrence of an accident and cannot be defeated by any terms of the policy." *Hartford Ind. Co.* v. *Wolbarst,* 95 N. H. 40, 43, 44.

Whatever the rights of the plaintiff may be against the named insured the condition or provisions of IV (a) (4) of the policy cannot be used to defeat or avoid coverage so far as the injured defendants are concerned. With respect to them, the liability of the plaintiff becomes absolute upon the happening of the accident. *Phoenix Ind. Co.* v. *Conwell,* 94 N. H. 146.

It is of course true that the rights of the injured party must be

based upon the provisions of both the insurance policy and the Financial Responsibility Statute. Where a policy is written for a definite period with no provision for further periods, there can be no coverage beyond the term stated. A policy that has been cancelled before an accident cannot be the basis for liability. In order to establish coverage for a motor vehicle, it must be described or referred to in the policy and capable of being identified as such. Probably, the policy must contemplate coverage for the operation of such a car during some portion at least of the term. Whether there may be other instances of non-coverage, permitted by said chapter 122, apart from these examples need not now be decided.

The failure of the condition imposed upon the insured to notify the plaintiff of the purchase of the Hudson sedan as required under paragraph IV (a) (4) of the policy did not defeat the coverage of the automobile under that paragraph for third persons. The policy did provide for coverage of newly acquired automobiles and the car involved in the accident was actually insured under the policy for a period of thirty days even with respect to the insured.

In the *Conwell* case, a provision of the policy attempting to limit the coverage of other automobiles to the period while the insured was the owner of the described automobile was held not to result in non-coverage of another car used after the insured ceased to be the owner of the described car. It was said that the liability of the insurer became absolute upon the happening of the accident and that language contained in the policy could not be used to defeat the policy. The word "absolute" as used in said chapter 122 means that there shall be no defenses to the liability of the insurer based upon any statement made by the insured or on his behalf or upon any exclusions, conditions, terms or language contained in the policy.

In *Century Ind. Co.* v. *Simon,* 77 F. Supp. 221, it was held that a defense of a breach of warranty of ownership, otherwise available to the insurer in a suit on the automobile policy, was not available where the policy was covered by the New Jersey Motor Vehicle Financial Liability Law. It was said that the insurer's liability became absolute when the accident occurred.

The plaintiff argues that the case of *Employers Assurance Co.* v. *Sweatt,* 95 N. H. 31, is analogous and that it is authority for a decree of no coverage. It was there held that a policy that is not assigned to the purchaser of a motor vehicle affords no coverage to him in the absence of the insurer's express or implied consent. The

court correctly said on page 35: "There is no provision of the policy or any section of the Financial Responsibility Act which provides automatic coverage to the purchaser 'of. the motor vehicle of the insured.'" An assignee of the named insured is not covered by the policy until the company's consent is endorsed thereon. No provision of the policy or of the statute provides for any coverage for an assignee until there is consent, which is a new agreement, by the insurer. Coverage under the present circumstances requires no further agreement by the insurer and its defeat is forbidden by said paragraph III of section 16 of chapter 122 of the Revised Laws.

The plaintiff attempts to distinguish the *Conwell* case on the ground that in that case there was involved a statutory liability to cover non-owned automobiles. The language of the statute on which the *Conwell* decision is based and the language of the opinion itself are not so limited. The provision that thirty days' notice must be given in order to continue the coverage as to a new automobile purchased to replace the automobile described in the policy cannot be used to defeat the rights of third persons during the policy period of coverage originally provided in the insurance contract.

However, the decree of the Superior Court was in error in ordering coverage to the full policy limits. These are $25,000 and $50,000. The Financial Responsibility Act requires limits of $5,000 and $10,000.

The defendants argue that this issue is not properly before this court since it was raised in the Superior Court only by general exception to the decree. They contend that a formal pleading of the plaintiff's claim with respect to the limits was necessary under the following provision of section 15 of said chapter 122, which section deals with the form of the policy: "Further, if the policy shall provide for limits in excess of the limits specified in this chapter, the insurance carrier may plead against any plaintiff, with respect to the amount of such excess limits of liability, any defences which it may be entitled to plead against the insured. . . ." The word "plead" is not used in its technical sense, but in the sense of raising any defenses. It is not reasonable to suppose that the Legislature intended this right of defense to depend upon the formal filing of a pleading, although such filing would be correct and perhaps desirable.

The issue of the financial limits of the application of the Financial Responsibility Act is one of law upon undisputed facts. "Questions of law, apparent upon the face of the findings and rulings filed, are

thus made available to the parties." *Freeman* v. *Pacific Mills*, 84 N. H. 383, 385. See also, *Plante* v. *Shortell*, 92 N. H. 38; *Eastman* v. *Waisman*, 94 N. H. 253.

The endorsement on the policy referred to above provides that nothing contained herein shall "apply to any insurance afforded by the policy which is not required by chapter 122, Revised Laws of New Hampshire, or any statutes amendatory thereof or supplementary thereto." Section 8 of the conditions of the policy, which deals with the application of Financial Responsibility Laws generally, provides for a liability insurance "to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits on liability stated in this policy." Paragraph III of section 16 of said chapter 122, which is the authority for the position taken with respect to the insurer's liability, provides that it is "subject to the minimum limits of liability validly made under the authority of paragraph VII of section 1 of this chapter. . . ."

The view here taken of the financial limitation of the principles of the *Conwell* case is supported by *Behaney* v. *Travelers Ins. Co.*, 121 F. (2d) 838, 842. See also, *Hartford Ind. Co.* v. *Wolbarst*, 95 N. H. 40, 44.

*Decree modified.*

DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting:* I am unable to agree with the view of the majority of the court that the plaintiff's liability is established by the Financial Responsibility Act. R. L., c. 122. As I interpret the act, it did not require the plaintiff to provide automatic coverage of newly acquired automobiles. *Cf. s.* 16 IV. Hence the cases of *Merchants &c. Co.* v. *Egan*, 91 N. H. 368 and *Phoenix Ind. Co.* v. *Conwell*, 94 N. H. 146, are not controlling. The plaintiff provided such coverage for thirty days and it had lapsed before the accident occurred. *Mitcham* v. *Traveller's Indemnity Co.*, 127 F. (2d) 27. Consequently the plaintiff incurred no "absolute" liability (*s.* 16 I). The policy remained in effect with respect to the operation of automobiles not owned by the insured (*Phoenix Ind. Co.* v. *Conwell, supra*) and it was neither "defeated" nor "avoided" within the meaning of section 16 III, by the termination of coverage which the act did not require to be maintained. *Employers Assurance Co.* v. *Sweatt*, 95 N. H. 31.