**Hilario SIERRA**

v.

**Bernard ROMPREY, Defendant,**
**Merchants Mutual Casualty Company,**
**Intervener,**
**Philip J. Romprey, Defendant.**

**Civ. A. 1424.**

United States District Court
D. New Hampshire.

April 25, 1958.

**484**

Burns, Calderwood, Bryant & Hinchey, Dover, N. H., for plaintiff.

George P. Cofran, Concord, N. H., for defendant.

CONNOR, District Judge.

This is a petition for a declaratory judgment filed by the Merchants Mutual Casualty Company, intervener, to determine coverage of an automobile liability policy issued by it to one Philip J. Romprey.

The pertinent facts are as follows: On July 6, 1952, the intervener issued to Philip J. Romprey policy numbered N566472 which insured, by an endorsement dated August 11, 1952, a 1946 Oldsmobile. On or about January 12, 1953, the insured sold the Oldsmobile. He had purchased a 1946 Packard in the fall of 1952, and registered it on April 3, 1953. Prior to the expiration of Romprey's policy, July 6, 1953, the intervener, following the usual practice, issued and mailed to him, through its local broker, another policy, numbered N603937, to become effective on that date. This new policy, the subject of this litigation, described by its terms the 1946 Oldsmobile and covered the use of other automobiles under certain conditions not here relevant. Both policies contained the following clause:

IV(a) Except where stated to the contrary, the word "automobile" means: * * * (4) * * * an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if it * * * replaces an automobile described in this policy * * *

On July 28, 1953, Bernard Romprey, while driving the Packard in Ayer, Massachusetts, with the consent of Philip, met with an accident in which the plaintiff was allegedly injured.

While the intervener has at no time refunded any portion of the premium to Philip J. Romprey, the new policy was endorsed on August 3, 1953, to cover a 1949 Lincoln. On May 14, 1954, it was stipulated by and between Philip and the intervener that any action taken by the intervener in investigating, adjusting or attempting to adjust the case would not be construed as an admission of coverage.

■ An important issue is whether Philip J. Romprey gave notice to the intervener prior to the accident, of the sale of the Oldsmobile and the acquisition of the Packard. Evidence was received on this issue, but the testimony most favorable to the plaintiff was a statement by an employee of the intervener's broker that it was "possible," but "unlikely" that she could be mistaken in thinking that no notice was given by Philip J. Romprey of the ownership of the Packard. Philip himself could not remember whether he gave notice or not. Other evidence was elicited attempting to show a custom or habit of Philip's to give notice whenever he bought a car, but this is inconclusive at best. On this state of the record, I find that Philip J. Romprey never notified the intervener of the ownership of the Packard until after the accident.

■ Plaintiff advances the theory that the policy in dispute, numbered

N603937, covered whatever automobile the insured owned for a period of thirty days after issuance of the policy, because of the clause therein allowing a thirty day grace period for notifying the company of a change in automobile. Fairly construed, this clause permits of no such interpretation. The thirty day period starts to run from delivery of the newly acquired automobile, not from delivery of the policy.[1]

Nor can coverage be predicated on any concept of mutual mistake. Although the intervener admitted that the risk involved was the same for the Packard as for the Oldsmobile, the policy by its express terms describes an Oldsmobile, not a Packard. The terms of the policy are the ultimate expression of the intention of the parties, and unless both parties were mistaken in thinking that their contract expressed their mutual intention, there can be no reformation for mutual mistake. The intervener intended to describe an Oldsmobile, for it had no knowledge of the Packard until after the accident, and Philip J. Romprey must have intended to insure a Packard. At best, there was a unilateral mistake on the part of Philip J. Romprey in thinking that the policy expressed his intention; his remedy may be rescission but certainly not reformation. See Restatement of Contracts § 503. It is important also to note that clause IV of the policy contains the following language:

> Automobile Defined, * * * (a) Automobile. Except where stated to the contrary, the word "automobile" means: (1) Described Automobile—The motor vehicle * * * described in this policy.

The clear impact of the foregoing clause is that the description of the automobile to be covered is material.

The question of coverage is to be determined by the law of this state. The intervener's broker testified that renewals were automatically written by the intervener's Boston office and forwarded to him in Laconia about forty-five days prior to the expiration date of the old policy. After being checked and filed, the renewal was delivered to the insured. On a similar state of facts, the New Hampshire Supreme Court decided, in Perry v. Dwelling-House Insurance Co., 67 N.H. 291, 33 A. 731, that the policy was to be regarded as made in this state and to be interpreted according to the law of this state.

New Hampshire law being controlling, I am bound by the case of Great American Indemnity Co. of New York v. Richard, 1939, 90 N.H. 148, 5 A.2d 674. In that case, the insurance company issued an automobile liability policy to the defendant, dated October 16, 1935, for the term of one year. It covered the use of a described truck. On August 31, 1936, the defendant exchanged the truck for another one. On October 22, 1936, the plaintiff's agent delivered to defendant a renewal policy describing the old truck. At that time, he was informed of the change in trucks. The policy was left with the defendant, and the plaintiff then told its agent to return the new policy for cancellation and endorse the old policy, to cover the new truck. Before this was done and while the new policy was still in the defendant's possession, an accident occurred involving the new truck. The risk involved was the same for both trucks. The court held that there was no coverage, saying:

> "The renewal policy furnished no insurance. It gave protection only for the use of the truck the defendant has ceased to own." 90 N.H. at page 149, 5 A.2d at page 675.

The facts in American Casualty Co. v. Maryland Casualty Co., D.C.Pa.1937, 20 F.Supp. 561 are similar to those of the instant case. There the defendant issued a one year policy on a motorcycle. During the year, the insured sold the

---

1. In view of this and the other conclusions reached, no need appears to decide whether the Packard was a "replacement" of the Oldsmobile within the meaning of the quoted clause of the policy.

motorcycle and bought a new one, but gave no notice of the change. The policy was renewed for another year, but still described the old motorcycle. The court held that there was no coverage, saying, at page 563:

"This policy was but a renewal of the prior policy issued when the motorcycle in question was owned by the assured, and in the absence of notice of the sale defendant was entitled to assume that the motorcycle insured remained in the assured's possession. The policy was issued by the defendant under a mistake of fact for which the responsibility rests with the assured and it was therefore void."

For comparable cases in which it was held that failure to notify the insurer of a change in auto resulted in non-coverage, see Jamison v. Phoenix Indemnity Co., D.C.N.J.1941, 40 F.Supp. 87; Mitcham v. Travelers Indemnity Co., 4 Cir., 1942, 127 F.2d 27 and Providence Washington Indemnity Co. v. Edes, D.C. Me.1953, 109 F.Supp. 813.

 It was argued that the intervener waived its right to claim non-coverage by retaining the premium. However, the reason for not refunding the premium was that the intervener was subject to liability on the policy, both under the clause covering the use of other automobiles and also under an endorsement dated August 3, 1953, covering a 1949 Lincoln. Moreover, the parties executed a non-waiver agreement.

Paragraph III of Section 16 of the New Hampshire Financial Responsibility Act, RSA 268, is of no aid to the plaintiff because by its express terms its application is limited to accidents occurring within the State. See Farm Bureau Automobile Insurance Company v. Martin, 97 N.H. 196, 84 A.2d 823, 29 A.L.R. 2d 811.

I therefore conclude:

Policy numbered N603937 at no time covered the 1946 Packard.

The intervener is not obligated to defend Bernard Romprey nor to pay any judgment that may be rendered against him in the action of Hilario Sierra v. Bernard Romprey, now pending in this court.

There was no waiver by the intervener of its right to claim non-coverage.

The Financial Responsibility Act, RSA 268:16 does not govern the issue of coverage.