149 So.2d 68 (1963)
BOSTON INSURANCE COMPANY, a foreign corporation, Appellant,
v.
Charlie L. SMITH, Appellee.
No. D-447.
District Court of Appeal of Florida. First District.
January 29, 1963.
*69 Donald O. Hartwell of Hall, Hartwell & Hall, Tallahassee, for appellant.
Jim L. Dye, Tallahassee, for appellee.
CARROLL, DONALD K., Chief Judge.
In this suit for specific performance of an automobile insurance contract, the insurer has appealed from a final decree entered by the Circuit Court for Leon County ordering such performance.
The timetable of events pertinent to the question presented on this appeal is as follows:
On June 16, 1961, the appellee, who was the plaintiff below, made an application for liability insurance under the automobile assigned risk plan to a certain insurance agent. In his application he listed the only automobile which he then owned  a 1951 Mercury automobile, which had been damaged in an accident three days before. The agent mailed the application, together with a required deposit given by the plaintiff, to the assigned risk office in another city of this state. This risk was assigned to the appellant insurance company, which on July 10, 1961, issued the policy involved here covering the policy period of July 4, 1961, to July 4, 1962.
On June 22, 1961, three days after applying for the insurance, the appellee purchased a 1951 Pontiac automobile, which was involved in a wreck on September 26, 1961. The insurer denied liability for the damages to the Pontiac on the ground that this car was not covered by the policy. The validity of this ground is the crucial question on this appeal.
In this appeal we are called upon to construe and apply to the situation here the following provisions of the policy relating to coverage:
"IV. Automobile Defined * * * Including Automatic Insurance.
"(a) Automobile. Except with respect to division 2 of Coverage C and except *70 where stated to the contrary, the word `automobile' means:
"(1) Described Automobile  the motor vehicle or trailer described in this policy;
* * * * * *
"(4) Newly Acquired Automobile  an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, * * * and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required if the newly acquired automobile replaces an owned automobile covered by this policy * * *."
The precise question, then, is whether the plaintiff's Pontiac was a "newly acquired automobile" within the quoted provision. In other words, was the Pontiac covered by the policy because it replaced an automobile (the Mercury) owned by the plaintiff and covered by the policy?
In our opinion, the above provision of the policy is ambiguous as to whether a motor vehicle qualifies as a "newly acquired automobile" only if it replaces an automobile that was actually covered by the policy at the time such replacement took place.
Reviewing the facts pertinent to this particular question, we find the undisputed fact that that coverage period was July 4, 1961, to July 4, 1962; that the plaintiff purchased his Pontiac on June 22, 1961, and wrecked it on September 28, 1961.
The evidence adduced at the hearing, however, did not definitely fix the exact date when the Mercury was replaced by the Pontiac. In many instances such date would probably not be susceptible of absolute proof, for a decision to replace one car with another is not always manifested by physical acts about which testimony could be given. Some light might be cast, however, by the uncontradicted testimony of the plaintiff at the hearing that, after the accident on June 16, 1961, he drove the Mercury to his home and parked it there; that a week or two later he sold it to a junk dealer. As indefinite as this evidence may be, a fair inference may be made therefrom that the Pontiac replaced the Mercury sometime between June 19, 1961, the date of the application for the policy, and July 4, 1961, when the coverage period commenced. In this situation we think, construing the policy provision in question most strictly against the insurance company, that on the date of the replacement the Pontiac came under the policy coverage as a "newly acquired automobile."
The general rule is firmly established in Florida that the terms of an insurance policy that are ambiguous, equivocal, or uncertain to the extent that the intention of the parties is not clear and cannot clearly be ascertained by the application of ordinary rules of construction, are to be construed strictly and most strongly against the insurer and liberally in favor of the insured, so as to effect the dominant purpose of payment to the insured. National Casualty Co. v. Zmijewski, 143 Fla. 285, 196 So. 587 (1940). Bennett v. Fidelity & Casualty Co., 132 So.2d 788 (Fla.App. 1961). 18 Fla.Jur., Insurance, Section 94. As the Supreme Court of Florida said in National Automobile Insurance Association v. Brumit, 98 So.2d 330 (Fla. 1957):
"We have many times announced the rule that the provisions of a policy of insurance which tend to limit or avoid liability are to be construed most liberally in favor of the insured and strictly against the insurer. Poole v. Travelers Ins. Co., 130 Fla. 806, 179 So. 138."
We consider that our construction of the policy provision in question is consonant with the obvious purpose of that provision to give coverage to a newly acquired automobile when it replaces the sole automobile owned by an insured. In the ordinary case *71 such a replacement of one car by another owned by the same person would probably not appreciably increase the insurer's liability for the coverage contracted for by an insured.
The appellee has filed a motion for the allowance of reasonable attorneys fees for services rendered before this court in this cause. This motion was presumably filed pursuant to the provisions of Section 627.0127, Florida Statutes, F.S.A., relating to the allowance of attorneys' fees to an insured or a beneficiary under an insurance contract when a judgment is entered against the insurer. In addition to the fact that this motion was filed two months late in violation of Rule 3.16, subd. e of the Florida Appellate Rules, 31 F.S.A. the motion must be denied for the reason that the Florida courts have consistently held that the mentioned statute does not authorize the allowance of an attorney's fee in defending a judgment on appeal. Metropolitan Life Ins. Co. v. Jenkins, 153 Fla. 53, 13 So.2d 610 (1943). Grand Assembly, etc. v. New Amsterdam Casualty Co., 102 So.2d 842 (Fla. App. 1958). Travelers Ins. Co. v. Tallahassee Bank and Trust Co., 133 So.2d 463 (Fla. App. 1961). Motion denied.
No reversible error in this record having been demonstrated in this appeal, the final decree appealed from is
Affirmed.
WIGGINTON, J., concurs.
STURGIS, J., dissents.
STURGIS, Judge (dissenting).
I respectfully differ with the majority because in my opinion subparagraph IV(a) (1) of the contract is not ambiguous. I think it clearly expresses a lawful purpose of the high contracting parties that cannot be rationalized as extending coverage to an automobile already owned by the insured at the time the insurance contract was executed.
The meaning of an insurance contract is no more subject to judicial change than any other contract. Metropolitan Life Ins. Co. v. Rosier, 189 Okla. 448, 117 P.2d 793. While it is true that such contracts are amenable to the demands of public policy and on that premise are strictly construed in favor of the insured, and that they are subject to broader legislative regulation than most contracts, the parties are bound by the plain terms thereof unless in violation of public policy or an infringement of a statute. The requirement that the language of a policy be construed in favor of the insured does not require it to be strained to cover every claim upon which he may insist. Howe v. Crumley, Jones & Crumley Co., Ohio App., 57 N.E.2d 415 (1944).
The plain provisions of subparagraph IV (a) (4) of the contract in suit extend coverage to an automobile which "replaces an automobile * * * covered by this policy." The word "covered" as there used is synonymous with the word "described" in the preceding subparagraph IV(a) (1) of the contract reading: "Described Automobile  the motor vehicle * * * described in this policy."
A liability policy affords coverage to the insured only with respect to the vehicle described in the policy or by its plain provisions covered thereby, and does not relate to the general liability of the insured considered separately and apart from the vehicles thus specifically covered. See: 5A Am.Jur., Automobile Insurance, Sec. 83, page 81; 34 A.L.R.2d 938; Kissgen v. Continental Casualty Co. of Indiana, 148 So. 732 (La. App. 1933); Sheeren v. Gulf Ins. Co. of Dallas, Texas, 174 So. 380 (La. App. 1937). In order to establish coverage for a motor vehicle it must be described or referred to in the policy and be capable of being identified as such. Farm Bureau Automobile Ins. Co. v. Martin, 97 N.H. 196, 84 A.2d 823, 29 A.L.R.2d 811 (1951); Utilities *72 Ins. Co. v. Wilson, 207 Okla. 574, 251 P.2d 175 (1952).
The last cited case is directly in point with the case on review. It was there held that where a policy of liability insurance had issued upon a truck that for some time prior thereto had been left on the farm of the insured without being driven, and at the time of the issuance of such policy the insured owned another truck that was being operated by him, the latter truck was not a newly-acquired vehicle within the meaning of the automatic insurance provisions of the policy. In the case on review, the automobile described in the application for coverage and described in the policy is a Mercury. This automobile was owned at that time by the insured and is unquestionably covered by the policy. Whether that automobile was or was not in operating condition at the time has no bearing on the issues of this appeal. There is no duty on the insurer to check the accuracy of the claim of ownership of an automobile described in the application as the vehicle to be insured. The insurer is entitled to rely upon applicant's representations as being correct. The fact is that at the time the policy was issued appellee owned the automobile described in his application and covered by the policy; and the critical additional fact is that he owned another automobile prior and subsequent to the issuance of the policy, the Pontiac, to which coverage is extended by the interpretation placed by the majority on the mentioned provisions of the policy. I do not think this is a proper construction of insurer's liability.
Maryland Casualty Co. v. Toney, 178 Va. 196, 16 S.E.2d 340 (1941), cited by appellee, holds that the purpose of the automatic insurance clause is to provide coverage for the replacement automobile at the earliest time the insured needed protection. I agree with that concept, but it does not clash with the proposition that until there exists a binding contract insuring a particular vehicle, the latter cannot be replaced by another so as to bring it within the purview of the automatic insurance provisions of the contract.
Merchants Mutual Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483 (1940), is also relied on by appellee. That case is not in point because it applied coverage to a newly acquired automobile purchased after the contract of insurance came into force for the purpose of replacing the automobile covered by and described in the policy. I recognize that as a proper application of the contractual intent.
For the reasons stated, I dissent.