320 So.2d 527 (1975)
Eddie ELLERSON
v.
Richard I. SCOTT et al.
No. 56015.
Supreme Court of Louisiana.
October 1, 1975.
Rehearing Denied November 4, 1975.
Byron Magbee, Baton Rouge, for plaintiff-applicant.
Horace C. Lane, Lane & Clesi, Baton Rouge, for defendants-respondents.
DIXON, Justice.
Writs were granted in this case because of a conflict between the circuits in the interpretation of a provision in automobile insurance policies.
A personal injury suit was filed against Scott and State Farm Mutual Automobile Insurance Company, arising out of an automobile accident involving a 1966 Ford owned by Scott.
State Farm moved for summary judgment, attaching an automobile liability insurance policy and an affidavit by the defendant Scott.
Scott owned two automobiles at the time he purchased the policy involved. The policy, however, insured only a 1970 Ford automobile. A 1963 Chevrolet automobile, which Scott had owned for some time, was not listed in the policy. The accident occurred on February 6, 1972; the policy period was from August 21, 1971 to February 21, 1972. The 1966 Ford involved in the accident was acquired by Scott on November 19, 1971 in a transaction in which Scott disposed of the 1963 Chevrolet. No notice was given to the insurance company, and no request was made by Scott for coverage of the 1966 Ford.
*528 The allegations in Scott's affidavit are as follows:
"On November 19, 1971 he purchased the said 1966 Ford automobile, and in connection with the purchase of said 1966 Ford he traded in a 1963 Chevrolet, which he had owned for approximately three and one-half years prior to November 19, 1971.
"The 1963 Chevrolet was uninsured on November 19, 1971, at the time it was traded in connection with the acquisition of the 1966 Ford, and, in fact, the 1963 Chevrolet was never listed as a described vehicle on any policy issued by State Farm Mutual Automobile Insurance Company.
"He never reported acquisition of the 1966 Ford to State Farm Mutual Automobile Insurance Company during the policy period mentioned in Article 1 above, and he never requested to State Farm Mutual Automobile Insurance Company that any insurance coverage be extended on the 1966 Ford."
Summary judgment was rendered in favor of State Farm, and affirmed by the Court of Appeal. 306 So.2d 877 (La.App., 1st Cir. 1975).
The policy provision involved is:
"`owned automobile' means
(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded.
(b) a trailer owned by the named insured.
(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
(1) it replaces an owned automobile as defined in (a) above, or
(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or. . ." (Emphasis added).
In affirming the trial court's summary judgment dismissing plaintiff's action against the insurer, the First Circuit followed other opinions of that circuit. Hartzog v. Eubanks, 200 So.2d 303 (La.App.1967); Altazan v. Reed, 154 So.2d 610 (La.App.1963). Its opinion conflicts with Conner v. Motors Insurance Corp., 216 So.2d 555 (La.App., 3d Cir. 1968).
The plaintiff Ellerson contends that the additional vehicle was automatically covered by virtue of the provisions in the policy quoted above, by which automatic insurance is provided for a vehicle acquired during the policy period either if it replaces a described vehicle or if at the time of acquisition the company insures all automobiles owned by the insured. Plaintiff's argument is based on the contention that the only car Scott owned at the moment prior to the acquisition of the 1966 Ford was the 1970 Ford listed in the policy, and that, therefore, State Farm insured all automobiles owned by Scott at the time of acquisition of the 1966 Ford and, therefore, the 1966 Ford is automatically covered.
State Farm denies coverage for the reason that, on the date of acquisition of the new vehicle, the insurance policy did not afford coverage to all automobiles owned by the named insured.
The only reasonable construction that can be placed on the affidavit attached to State Farm's motion for summary judgment is that the disposition of the 1963 Chevrolet and the acquisition of the 1966 Ford was a simultaneous transaction. Scott traded the Chevrolet for the 1966 *529 Ford. An exchange takes place by the "bare consent of the parties." C.C. 2661. A sale is perfected when there is agreement on the object and the price. C.C. 2456. There is no state of suspension for ownership of automobiles in a car trade. Ownership changes simultaneously upon agreement of the parties.
We find no ambiguity in the policy provisions involved. It is clear that the insurance policy afforded protection for liability involving automobiles described in the policy, additional newly acquired vehicles provided either that they replaced a described vehicle or provided that the policy covered all automobiles owned by the insured at the time of the acquisition.
Conner v. Motors Insurance Corp., 216 So.2d 555 (La.App.1968) is overruled.
The Court of Appeal and district court are correct in dismissing plaintiff's suit against State Farm Mutual Automobile Insurance Company. The judgment of the Court of Appeal is affirmed, at plaintiff's cost.
SANDERS, C.J., dissents for the reasons assigned by TATE, J.
TATE, J., dissents and assigns reasons.
BARHAM, J., does not participate.
TATE, Justice (dissenting).
I respectfully dissent.
In the first place, even conceding that the majority's interpretation of the automatic insurance clause is correct, disputed issues of fact prevent summary judgment in this case. In the second place, the majority interpretation of the clause overlooks its deliberate broadening so that the 1963 standard family automobile policy will provide continuous and all-inclusive coverage not only to the described automobile but also to all automobiles acquired during the policy year.

I.
The majority opinion quotes the artfully worded affidavit submitted by State Farm in connection with its motion for summary judgment. The affidavit merely avers that the 1966 Ford "in connection" with trading in the uninsured Chevrolet. This is far from averring that the Chevrolet was simultaneously traded in for the 1966 Ford.
As the plaintiff notes, the choice of language perhaps deliberately does not negative two separate transactions at two different times: a sale of the Chevrolet for cash or credit; and a purchase of the 1966 at some subsequent time, perhaps weeks or months later. That is, the affidavit does not attempt to establish a virtually simultaneous transaction.
Merely because an uninsured automobile is sold and at some time later a new automobile is acquired does not prevent application of the automatic insurance clause. The majority does not intend to so hold. Yet in effect it permits an affidavit open to such construction to support a holding of a simultaneous transaction.
This is contrary to the well-settled jurisprudence that summary judgment does not lie except in the case of undisputed material fact and that affidavits are not construed in favor of the pleader who ex parte confected them but rather in favor of full trial on the merits, with cross-examination by the opposing party to be available to test the truth of matters within the knowledge of the affiant far more than of his opponent. La.C.Civ.P. arts. 966-68; Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Roy & Roy v. Riddle, 187 So.2d 492 (La.App. 3d Cir. 1966).

II.
The plaintiff Ellerson contends that the additional vehicle was automatically covered by virtue of an after-acquired provision in the policy. By this provision, automatic insurance is provided to a vehicle acquired *530 during the policy period either if it replaces a described vehicle or if at the time of acquisition the company insures all automobiles owned by the insured.[1]
(The policy clause, Footnote 1, applies to the newly acquired automobile if on the "date of such acquisition" the company insured all automobiles owned by the named insured. State Farm does not dispute that the prime meaning of "date" is "the time at which an event occurs" or "a given point of time", not the calendar day. Webster's New International Dictionary, verbo "date" (3rd ed. 1961); Webster's Seventh New Collegiate Dictionary, verbo "date" (1961).)
State Farm does not deny that, under the policy definition, coverage is automatically afforded to additional automobiles acquired during the policy period.[2] However, it principally denies coverage here because, on the date of acquisition of the new vehicle, it did not afford coverage to "all" automobiles owned by the named insured. It primarily contends that the after-acquired provision is only intended to afford coverage to additional vehicles when they do not replace other non-insured vehicles. State Farm summarizes its contention in brief: For the provision to apply to the after-acquired vehicle, "it must be either a replacement vehicle, or an additional vehicle, increasing the number of cars owned by the insured."
The majority does not adopt State Farm's construction. In effect, it holds for no explained reason that a simultaneous trade-in of an uninsured vehicle for a new vehicle prevents application of the automatic insurance clause to the newly acquired automobile.
Under circumstances similar to the present the Third Circuit has to the contrary construed this provision as affording coverage to the after-acquired vehicle. Conners v. Motors Insurance Corporation, 216 So.2d 55 (La.App., 1968); Collins v. Government Employees Insurance Co., 168 So.2d (La.App., 1964). So did the only out-of-state decision cited to us. Auto Owners Insurance Co. v. Keller, 370 Mich. 496, 122 N.W.2d 728 (1963).
*531 In holding to the contrary, the decisions of the majority of the Third Circuit and of the Michigan Supreme Court point out that, under the unambiguous wording of the insurance policy, the automatic coverage is provided for any additional vehicle acquired by the insured during the policy period, if indeed the company insures all other vehicles owned by the insuredowned at the time the new vehicle is acquired; not at the time the policy is issued. They further reason:
Since the previously uninsured second vehicle is traded at the time the new automobile is purchased, at the time (instant) of the latter's acquisition of the only vehicle owned by the insured is that described by the insuring policy. Thus, the new vehicle is automatically insured by the terms of the after-acquired provision; for at the instant (time) of its acquisition, the company is insuring all other vehicles then owned by the named insured.
Considering the well-settled principle that ambiguities in insurance contracts are construed against the insurer (which wrote the policy) and in favor of coverage, I believe the latter decisions represent the better view.
The clause unambiguously insures vehicles acquired during the policy period, if all other vehicles owned by the policyholder are insured by the company. The provision does not limit this coverage to vehicles additional in number to those owned at the time the policy is issued, nor does it exclude from the benefits of this provision new automobiles which replace an automobile owned by the policyholder at the time the policy was issued but not then insured by him.
Despite State Farm's skillful argument, we should be unwilling to write in these restrictions on coverage of after-acquired automobiles when the policy itself does not do so. In this regard, we might note that a former automatic-coverage provision of standard policies did indeed explicitly limit it somewhat as now requested.[3] This re-enforces my view that the courts should not re-write the present broad provision so to re-include the limitations on automatic coverage now omitted by the company itself in the present standard policy issued for a premium based on this broader coverage.
The trade-in of the uninsured vehicle is not shown to have occurred on the same calendar day, nor are the transfers shown to have occurred within minutes or even moments of one another.
Even if such had been the case (as oral argument may have implied), the same reasoning afords coverage to the newly-acquired vehicle. As the Michigan Supreme Court noted in affording coverage to the new vehicle received in trade for the uninsured vehicle: The insured could not "own both at the same time. The instant title to the [uninsured] 1952 car passed to the dealer, title to the [newly-acquired] 1949 car passed to the principal defendant [the *532 insured]." Auto Owners Insurance Co. v. Zeller, 370 Mich. 496, 122 N.W.2d 728, 729 (1963). Or, as stated in Conner v. Motors Insurance Co., 216 So.2d 555, 557 (La.App.3d Cir. 1968), "in the connotation of ordinary speech, the reference to owning two vehicles on a given date connotes simultaneous ownership of them at the same time on that day, rather than ownership of one during only one part of the day and ownership of the other during only another part of the day."
In summary, I believe that the after-acquired 1966 Ford became entitled to automatic coverage under the terms of State Farm's policy, despite the circumstance that it was purchased to replace an uninsured vehicle: For at the time (instant) of its acquisition, the insured had divested himself of ownership of the uninsured automobile.

IV
State Farm alternatively contends that, in any event, the named insured did not give notice to it within thirty days of acquisition of the new vehicle of his election to insure it under the present policy, as allegedly required by the after-acquired provision. See footnote 1, where the provision is quoted in full.
Preliminarily, the provision for automatic insurance of additional vehicles acquired during the policy period requires that the name insured do so either during the policy period or within thirty days of the acquisition. The intent of the provision is to give the insured whichever is the longer period. Knotts v. Hardware Mutual Casualty Co., 272 So.2d 788 (La.App.2d Cir. 1973).[4]
In the instant case, the policy period was August 21, 1971 to February 21, 1972. The new car was acquired on November 19, 1971. Nevertheless, the notice period for election of coverage extended to February 21, 1972, the end of the policy period. The accident occurred on February 6, 1972, within the notice period.
State Farm points out, however, that the policyholder never did give his insurer notice of the new vehicle.
Nevertheless, the uniform jurisprudence holds that the right to coverage vests when the accident occurs during the notice period, whether or not notice has been or is subsequently given.
See: Pendleton v. Ricca, 232 So.2d 803 (La.App.4th Cir. 1970); Mathews v. Marquette Casualty Co., 152 So.2d 577 (La.App.2d Cir. 1963), certiorari denied, 244 La. 662, 153 So.2d 880 (1963) (* * * no error of law."); Annotation, Construction and application of automatic insurance clause . . .", 34 A.L.R.2d 936, 944 (Section 7) (1954) and Later Case Service. See also: 7 Appleman, Insurance Law & Practice, Section 4293 p. 87 (1962); 7 Blashfield, Automobile Law and Practice, Section 316.6, pp. 671-72 (3d ed. 1966); 12 Couch on Insurance, 2d 45:205, (1964).
The theory is that notice is not a condition for the coverage to exist, for the coverage is automatically extended by the policy terms upon acquisition of the new or additional vehicle whether or not notice is given and whether or not the additional premium owed has been paid. Thus, if an accident occurs during the notice period when coverage of the policy has automatically been extended to cover the after-acquired *533 vehicle, the coverage vests at that time, even if the notice has not been and never is given.
This being so, I need not here discuss the possible application by analogy of other Louisiana jurisprudence arising out of interpretations of our direct action statute, La.R.S. 22:655 (1963). This statute permits a direct action by an injured person against the tortfeasor's liability insurer, and it further provides that an automobile liability is issued for the benefit of injured persons and the public as well as the policyholder. In view of this, our courts have held an injured person's direct action against the liability insurer vests at the time of the accident and cannot be defeated by subsequent acts of the policyholder, such as the willful or negligent failure to give notice of an accident.
See: Futch v. Fidelity & Casualty Co., 246 La. 688, 166 So.2d 274 (1964); West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950); Jackson v. State Farm Mutual Auto. Insurance Co., 211 La. 19, 29 So.2d 177 (1946). Cf. also, Farm Bureau Automobile Insurance Co. v. Martin, 97 N.H. 196, 84 A.2d 823, 29 A.L.R.2d 811 (1951) and the accompanying annotation at 29 A.L.R.2d 817 (1953), concerning an insurer's liability to an injured person under policies issued by virtue of a compulsory automobile insurance law, despite a policyholder's failure to give notice of an after-acquired vehicle.
I therefore do not find merit in State Farm's alternative contention that the injured plaintiff's right to recovery against the insurer should be defeated by the policyholder's failure to give the insurer notice of the acquisition of the after-acquired vehicle.
Therefore, for the reasons assigned, the writer respectfully dissents.
NOTES
[1] The provision of the present 1963 standard family automobile insurance policy which applies to automatic insurance of additional automobiles is found at clause (c)(2) of the definition of an "owned automobile", which in full states:

"`owned automobile' means
(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded
(b) a trailer owned by the named insured
(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided:
(1) it replaces an owned automobile as defined in (a) above, or
(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile,
or
(d) a temporary substitute automobile".
[2] The "Premium" condition of the policy provides for a premium adjustment to be made when the insured acquires a different or new automobile. The jurisprudence uniformly construes the additional coverage as effective despite the failure of the insured to have paid the additional premium; partly because of the absence of any policy provision depriving him of such automatic coverage, partly because the "automatic" coverage would be defeated in practically all instances due to the usual negligence or failure of the insured to give the notice to the insured on the basis of which the premium adjustment is made. Annotation, construction and application of automatic insurance clause, 34 ALR2d 926, Sections 7 and 8 (1954) and Later Case Service. See Part IV of opinion below. Presumably, in calculating the initial premium, the insurer takes into account the additional coverages which may be provided by the automatic insurance clauses of the policies issued by it and the appreciable number of instances in which the additional premium will not be collected.
[3] The Third Circuit through Judge Culpepper relied too upon this broadening in the new standard family policies as a basis for affording the interpretation we too now adopt of the broader provision conferring automatic coverage on newly acquired vehicles. Collins v. Government Employees Insurance Co., 168 So.2d 415, 417 (La.App.1964).

The superseded provision is there quoted as providing coverage for an after-acquired vehicle:
"(a) if it replaces an automobile described in this policy, but only to the extent the insurance is applicable to the replaced automobile, or (b) if it is an additional automobile and if the company insures all automobiles owned by the named insured at such delivery date, but only to the extent the insurance is applicable to all such previously owned automobiles." (Italics ours.)
[4] This provision of the 1963 standard family automobile policy in this respect broadened the provision of the prior standard family automobile policies. The purpose of the thirty day provision is stated at Risjord-Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix 186 (1964) as: "When all automobiles are insured with the same Company, the insured may give notice of the acquisition of a newly acquired automobile at any time during the policy period, as formerly, or within 30 days after the acquisition if this period extends beyond the policy period."