James G. HITT, Appellant
(Plaintiff Below),

v.

Allen GITHENS and Midwestern
Indemnity Insurance Company,
Appellees (Defendants Below).

No. 05A04–8609–CV–281.

Court of Appeals of Indiana,
Fourth District.

June 22, 1987.

Rehearing Denied Aug. 4, 1987.

David M. Payne, Ryan, Welchons & Payne, C. Robert Rittman, Biddinger & Johnson, Marion, for appellant.

David S. Wallace, Warner, Wallace, McLaren & Dague, Muncie, Frank O. McLane, McLane & McLane, Marion, for appellees.

MILLER, Judge.

James G. Hitt filed suit against Allen Githens and Midwestern Indemnity Insur-

ance Company[1] seeking compensation for injuries he sustained in a collision between his motorcycle and Githens's 1971 Buick Electra. Midwestern sought by way of counterclaim, and obtained, a declaratory judgment stating it was not liable for damages since it was not the insurer of the Buick. Hitt appeals, and we affirm.

### FACTS

Midwestern issued an automobile liability policy to Joseph and Macqueline Githens on September 26, 1978. This policy, which was renewable every six months, extended coverage to two vehicles: a 1977 Dodge Van and a 1968 Ford three-quarter ton pickup truck.

In September of 1980, Macqueline Githens purchased a 1971 Buick Electra. At the same time, the Githens placed the Ford pickup for sale. Approximately two weeks after Macqueline bought the Buick, the Githens sold the truck. Some time later the Githens sold the 1977 Dodge Van and bought a 1980 Chevrolet Camaro.

The Githens's policy read, in part:
"Automobiles covered:

\* \* \* \* \* \*

(c) 'replacement automobile' means a private passenger or utility automobile of which the named insured acquires ownership during the policy period, provided it replaces the owned automobile; if no expiration date is stated in the declaratory, policy period means the period of time stated on the premium statement which is current at the time of the acquisition of the automobile.

(d) 'additional automobile' means an additional private passenger or utility automobile of which the named insured acquires ownership during the policy period provided the company at the time of acquisition specifically insures all other private passenger and utility automobiles owned by the named insured, and further provided notice of its delivery be given to

the company within the policy period or within 30 days after the date of such acquisition and any additional premium be paid by the named insured...." Record, p. 165.

The Githens continued to pay the premium on the policy at each renewal date, but they never informed Midwestern that they had purchased a new automobile and had disposed of the automobile named in the policy.

On July 21, 1981, Allen Githens was driving the Buick along Interstate 69. He exited I-69 intending to enter State Road 26. As he did so, he collided with a motorcycle driven by James Hitt. As a result of this accident, Hitt was injured and required hospitalization.

Githens reported the accident to his insurance agent. The agent informed him that the Buick was not listed as a covered automobile under the policy; he did notify Midwestern of both the accident and the change in automobiles. Midwestern denied liability under the policy, but it did agree to cover the new automobile after a slight increase in the collision insurance premium. Midwestern also retained the premiums paid for liability coverage for the period between the Githens acquisition of the Buick and the accident.

### DECISION

Hitt, in his brief, argues two distinct issues, although he purports to raise but a single issue. He first argues the contract should be interpreted to extend coverage to the 1971 Buick. Alternatively, he argues Midwestern's refusal to tender back the Githens's premiums estops it from denying liability under the policy. We do not agree with either argument.

### I. *Did the Liability Coverage Extend to the 1971 Buick?*

An insurance policy is a contract, and is to be construed as would be any other

---

1. Usually, the issue of insurance coverage is kept separate from personal injury litigation. *See Cromer v. Sefton* (1984), Ind.App., 471 N.E.2d 700. Here, the Githens sought bankruptcy protection, and Hitt obtained the permission of the bankruptcy court to pursue this action against the Githens to the extent of their insurance coverage. Hitt chose to join Midwestern, and Midwestern did not choose to object either at trial or on appeal.

contract in order to give effect to the intent of the contracting parties. *Evans v. National Life Accident Insurance Co.* (1984), Ind.App., 467 N.E.2d 1216. We may not extend the insurance coverage beyond that provided in the contract, nor may we re-write clear and unambiguous language in an insurance contract. *Farthing v. Life Insurance Company of North America* (1986), Ind.App., 500 N.E.2d 767; *American States Insurance Co. v. Aetna Life and Casualty Co.* (1978), 177 Ind.App. 299, 379 N.E.2d 510.

Hitt argues the policy is ambiguous, and should be construed to extend coverage for this accident to the Githens. Specifically, Hitt alleges the contract is ambiguous as to the policy period, and that it should be construed to mean the policy period did not terminate at the end of six months. He construes the contract to provide that the original period was extended each time the policy was renewed. Thus, since the Buick was a "replacement automobile" under the contract, and since the policy covered replacement automobiles "during the policy period," the Buick would have been covered at the time of the accident.

This argument is fatally flawed. It is true that an ambiguous policy is to be construed favorably to the insured, *Eli Lilly and Co. v. Home Insurance Co.* (1985), Ind., 482 N.E.2d 467, but it is also true that a policy is not ambiguous merely because the parties advance conflicting interpretations. *Northland Insurance Co. v. Crites* (1981), Ind.App., 419 N.E.2d 164. An insurance policy is ambiguous if reasonably intelligent people may honestly differ as to the meaning of the policy language. *Eli Lilly and Co., supra; Farthing, supra; Northland Insurance Co., supra.*

Here, the policy provides, "The initial and each successive policy period shall be the period in the declarations." Record, p. 165. The declarations state the initial policy period ran from March 26, 1981 to September 26, 1981, a period of six months. The declarations further provide for six month renewals of the policy. Given the language of the policy, we do not think any reasonably intelligent person could believe that the six month renewals were extensions of the original policy period; if they were, the reference to "each successive policy period" would be nothing but surplusage. If we were to accept Hitt's argument, there would be a single extended policy period, not a series of successive periods as stated in the policy. Hitt's argument is inconsistent with the language of the policy, and we must reject it.

Hitt also argues we should enforce the contract for public policy reasons. Liability insurance is, of course, favored in this state, and drivers are required to acquire liability insurance or certify that they are financially responsible for any potential liability in order to register their vehicles. IND. CODE 9–1–4–3.5. Even though the state favors liability insurance, we cannot ignore the unambiguous words of the contract. We will not bind the parties to a contract they did not make. *Farthing, supra.* We must, therefore, affirm on this ground.

## II. *Estoppel*

Hitt also argues, somewhat summarily, that Midwestern has waived the right to deny liability, or is estopped from denying liability, because it has refused to return the liability premiums for the period between the time the Githens purchased the Buick and the time they notified their insurance agent of the purchase. We find no waiver or estoppel here.

In many instances, an insurer's refusal to return unearned premiums will estop the insurer from denying liability under an otherwise void policy. *See generally,* 7 Blashfield, *Automobile Law and Practice,* p. 465–470 (3rd ed. 1966). If an insurer retains the premiums paid on a policy which it knows to be void *ab initio* because of some breach which prevents any risk from attaching, the insurer will be estopped from denying liability under the contract. *Security Underwriter's Inc. v. Long* (1929), 96 Ind.App. 9, 168 N.E. 699, *reh. den.,* 96 Ind.App. 9, 170 N.E. 355; *Kleiber Motor Truck Co. v. International Indemnity Co.* (1930), 106 Cal.App. 709,

289 P. 865; *Carroll v. Union Marine Insurance Co.* (1923), Mo.App., 249 S.W. 691; *Dairyland Insurance Co. v. Kammerer* (1982), 213 Neb. 108, 327 N.W.2d 618; 7 Blashfield, *supra.* However, if *some* risk, albeit minimal, attaches to the insurer, the insured has received valid consideration for his premium, a valid contract exists, and the insurer is not estopped from denying liability. *Sierra v. Romprey* (D.N.H.1958), 165 F.Supp. 483, *app. dismissed sub nom. Sierra v. Merchants Mutual Casualty Co.* (1st Cir.1958), 262 F.2d 287;[2] *Bridgewater v. General Exchange Insurance Corp.* (1939), 234 Mo.App. 335, 131 S.W.2d 220; 7 Blashfield, *supra.* It does not matter that the risk the insurer incurs is slight when compared with the premium it receives, since we will not weigh the adequacy of consideration.

Here, the liability section of the Githens's policy provided, in part:

"The company will pay for an insured all damages which the insured shall be legally liable to pay because of:

1. bodily injury sustained by any person, and

2. injury to or destruction of property, arising out of ownership, maintenance, or use, including loading and unloading, of the owned automobile or a *non-owned* automobile." Record, p. 165 (emphasis added.)

The policy defines a "non-owned automobile" as:

"an automobile, including a trailer, not owned by, or furnished or available for the regular use of, the named insured or any resident of his household, but does not include (1) a temporary substitute automobile, (2) an automobile furnished for the regular use of the named insured unless primary valid and collectible insurance is carried thereon...." Record, p. 165.

The Githens's liability policy insured against some risk, since the policy extended liability protection if they were to cause an accident while driving a non-owned automobile. While this protection might not be the protection for which they thought they were paying, it was consideration sufficient to support the contract and to justify retention of the premiums by Midwestern. Midwestern is not estopped to deny liability.

### CONCLUSION

The Githens's insurance policy is unambiguous, and it does not insure against liability for accidents caused by the Githens while driving their 1971 Buick. The fact Midwestern retained the Githens's premiums for the period between the time of purchase of the 1971 Buick and the time the purchase was reported to Midwestern does not, in this case, estop Midwestern from denying liability Midwestern incurred some risk, which is sufficient to justify retention of the premiums. The trial court did not err in granting declaratory judgment in favor of the company.

Affirmed.

HOFFMAN and YOUNG, JJ., concur.

---

**2.** The *Sierra* case is factually similar to this one. In *Sierra,* one of the defendants, Phillip Pomprey, purchased a liability insurance policy on a 1946 Oldsmobile. He later sold that car and purchased a 1946 Packard without informing the insurer of the change in cars. The policy provided coverage for replacement automobiles for a period of thirty days. The court, in refusing to estop the insurer from denying liability, stated:

"However, the reason for not refunding the premium was that the intervener was subject to liability on the policy, *both under the clause covering the use of other automobiles* and also under an endorsement dated August 3, 1953 covering a 1949 Lincoln." 165 F.Supp. at 486. (emphasis added)